FRANKLIN,
January,
1835.

CLARK and MEIGS *vs.* AZARIAH WATERMAN.

Where a person called a physician to attend, at his house, upon a female, who had been brought up in his family, but after coming of age, had the control of her time, and had resided in different families, but when taken sick, resided in his family as a servant, without any stipulated wages—*Held*, Such person is liable, as upon an original undertaking.

*Dictum*—A person is not ordinarily liable to pay for medical attendance on his servant.

This cause came here upon exceptions to the decision of auditors, who reported the facts to be as follows:

That in 1815, or 1816, the defendant received into his family one Caroline Hubbard, then about eight years of age, to keep, educate and maintain, till she should arrive to the age of eighteen years;—that said Caroline served out her minority, and afterwards continued to work in the defendant's family nearly all the time till her death, which happened soon after she was twenty-three years of age;—that during the five years of her freedom, she worked some in other families, in which cases she made her own contracts and received pay to her own use, and was at liberty to go and come when she pleased, without asking permission, but was not out of the defendant's employ to exceed one eighth part of the time, and that when in his employ she worked without any contract or accounting;—that she was taken sick at defendant's house, and while in his employ, as above mentioned, the fore part of November, 1830, and the defendant, in person, called on Doctor Meigs, one of the plaintiffs, and requested him to go and see Caroline, and Meigs accordingly visited her, and administered medicine, and continued his visits till defendant, finding fault with the practice and experience of Meigs, said he would call Doctor Clark, and accordingly called on Doctor Clark, the other plaintiff, in person, and requested him to visit Caroline, and in compliance with that request, Clark visited her and administered medicine till she died, the last of January following;—that during Caroline's confinement, the defendant, in person, frequently called on said Doctor Clark, and requested him to go and see his girl and cure her;— that not far from the time she died, defendant called on plaintiffs for the amount of their account, saying he wanted to lay it before the town, to see if they would not assist him. All the charges in the account accrued for the services above mentioned.

The defendant filed his exceptions—

1. That said Azariah Waterman was in no way bound or obligated in law to support or provide for the said Caroline Hubbard, and that the said Caroline, if living, was alone accountable for the attendance of said physicians.

2. That no sort of promise, from or by the said Azariah, was proved before said auditors, to be accountable for the doctoring the said Caroline, either by the parties or any indifferent persons.

FRANKLIN,
January,
1835.
Clark & Meigs
vs.
Waterman.

3. Because it does not appear by said report of the auditors, that the said Azariah did any thing more than call on the said Clark or Meigs to visit said person, then sick at his house, as a common messenger or friend.

4. Because it does not appear by said report, but to the contrary, that said Caroline was a natural or adopted child of said Azariah, or that he was in any way bound to support, provide for, or take care of her, after she arrived at the age of eighteen years.

The county court rendered judgment for the plaintiff, and defendant excepted.

*Sawyer and Weeks, for the defendant,* cited 2 Stark. Ev. part 4, p. 94—note Z, citing *Wennall* vs. *Adney.* 2 do. part 4, p. 82. Peters. Cond. Rep, 196. 3 do. 270. 1 Stark. 870. New. on Con. 352.

*Mr. Reed contra.*

The opinion of the court was delivered by

MATTOCKS, J.—The question is, whether the facts found by the auditors will in law justify the conclusion they came to, that the defendant was liable to the plaintiffs for their services as physicians, in attending upon Caroline Hubbard, then resident at defendant's house. If it was the intention of both parties that the defendant should pay the bill, then it would be a contract to that effect. The employment or request to attend upon the patient was made and often repeated by the defendant, in person. Complaints of the inefficient practice of one of the plaintiffs, and an exchange for the other, like a man acting in his own business, and at last a virtual admission that it was his expectation to pay, by calling for the bill to lay before the town, " to see if they would not assist him ;" this appears like an original employment by the defendant; and the plaintiff's making the charges directly against him is evidence that they so understood it. If these facts were such as it would have been proper, in action of assumpsit, to have left to the jury, then they were sufficient for the auditors to act upon. The other circumstances in the case, that the patient had been brought up by the defendant, and although she had been three years out of her time, yet continued most of the time in his family, and " in his employ, without contract or accounting," renders it not improbable

FRANKLIN,
*January,*
1835.
—————
Clark & Meigs
*vs.*
Waterman.

that he was willing to render her all needful aid in time of sickness, and that his intention was really such as his conduct naturally indicated. It is true, as contended by defendant's counsel, and as stated by Starkie, "that a master is not liable on an implied assumpsit to pay for medical attendance on his servant." Although Lord Kenyon, in *Learman* vs. *Castell*, 1 Esp. Rep. 270, ruled he was, yet it had before, in *Newbury* vs. *Willshire*, reported in 2 Esp. 739, in King's Bench, been decided otherwise; and in *Wennall* vs. *Adney*, 3 B. and P. 247, it was fully so settled; but never, it is believed, has it been so decided, if the attendance was at the request of the master. But however that may be, we do not put the case upon the ground of master and servant; but there being a request by the defendant, in his own name, upon the credit of which the services were rendered, it is very much as if the defendant had directed a shop-keeper to deliver her goods; and if he had not added, "charge them to me," or "I will pay for them," yet he would be chargeable with what was delivered in consequence; certainly, if by any subsequent act it should appear that he expected to pay for them. There seem to have been benevolence and kind intentions in the defendant towards the suffering female to whom he had formerly been in the place of a parent, and who was still an inmate of his family; and he should now meet the expenses those good feelings have occasioned to the plaintiffs; for although their practice was not successful, yet the result was quite professional. We do not mean by this determination to intimate, that a man who, by himself or another, happens to go for a doctor to attend a hired man, or maid, or sister, or friend in his house, is of course liable to pay the bill. In many, and perhaps most of these cases, the person going or sending might be regarded as a mere medium of intelligence that a physician was wanted; but where the proof in the case is sufficient, as we think it was in this case, to authorize the triers to find that the defendant intended, and gave the plaintiffs so to understand, that he was himself the employer, then the original credit was given to him; then he is liable upon general principles, and it not being the debt of another, is not affected by the statute of frauds.

Judgment of county court affirmed.