W. W. HOLMES v. ESAU McKIM, Appellant.

**Implied Promise to pay Doctor:** SERVICES TO MINOR LIVING IN FAMILY.
One is not under any implied obligation to pay for the services of
a physician called to attend a minor living with his family and
supported by him, but not otherwise related to him, though he
acquiesced in the attendance and had on a former occasion paid
the same doctor for attending the same minor, the physician
knowing, however, the true relations of defendant and said child.

*Appeal from Crawford District Court.*—HON. Z. A. CHURCH,
Judge.

THURSDAY, OCTOBER 12, 1899.

ACTION to recover for medical services. A jury was
waived, and trial had to the court. From a judgment in
plaintiff's favor, defendant appeals.—*Reversed.*

*J. P. Connor* for appellant.

*P. E. C. Lally* for appellee.

WATERMAN, J.—The amount involved being less than
one hundred dollars, the case is presented here upon certifi-
cate of the trial judge, which sets forth the facts as follows:
"Plaintiff, Holmes, is a registered, practicing physician,
under the laws of the state of Iowa, entitled, under the law,
to practice his profession, collect therefor, or to sue in the
courts and recover therefor. His services were rendered,
and his charges therefor are conceded to be reasonable and
necessary. In December, 1895, he treated one Leon McKim,
also known as Leon Mead, for a gunshot wound in the foot,
and for said services he seeks to charge the defendant Esau
McKim. The evidence shows that Esau McKim, defendant
in this action, reared a girl, who afterwards married one Jud.
Mead, she not being a blood relation of Esau McKim. As a
result of this marriage, a child was born, and said child was
taken in the house and home of defendant, Esau McKim,
while less than ten days old. That said child lived with said

Esau McKim, making his home with him, until he was of age. That during the minority of the said Leon McKim, or Leon Mead, the services were performed, he being about the age of nineteen or twenty years. During the time the said child Leon McKim, or Leon Mead, lived with the defendant, Esau McKim, he was known by the name of Leon McKim, but usually by the name of Leon Mead. That the plaintiff, W. W. Holmes, had, on one occasion prior to the time in question, treated the child, the child not being at home, and the defendant, Esau McKim, had paid the bill for said services, it being a small one. That the defendant, Esau McKim, during the time that the boy Leon McKim lived with him, purchased his clothes, his schoolbooks, sent him to school, furnished his food and lodging, and paid the bills contracted for the same. The injury for which the services were rendered was an accident received by the boy when he was away from the home of the defendant, Esau McKim, temporarily, and the services of the plaintiff as physician were furnished at the request of the child Leon McKim, or Leon Mead, or by a stranger sent to call the physician; the physician being called without the knowledge of the defendant, Esau McKim, with whom the child Leon McKim or Mead, lived. The facts show that, after the child had been treated at the house of the stranger for about a week or ten days, he was taken to the home of the defendant, with whom he had lived, and that he received the treatment of the physician at said home of defendant until he was cured of his injury; the defendant being present, and seeing the physician, and making no objection to the treatment of the boy, and in fact saying nothing for or against said physician's treating said child. The evidence further shows that the physician who treated the boy had known the boy all his life; that he was acquainted with the father of the boy, one Jud. Mead, who at the time the child was born lived in the same town in which the physician lived, and who at the time of this trial lived at a distance of about fifty miles from the place of treatment, and

was then engaged in mercantile business at said place, and
the physician knowing that the defendant, with whom the
child lived, was not in fact his father, nor in any way
related to him, except that the mother of the child
had been reared by the defendant in the defendant's
family. The evidence showing further that the said
Leon McKim, or Leon Mead, had not been adopted
on paper, as provided by law, as the child of
Esau McKim; and the evidence further showing that the
plaintiff's physician did not examine the records at any time
prior to the services to discover the fact whether or not said
child Leon McKim, or Leon Mead, had been adopted on
paper, as provided by law, as the child of Esau McKim, and
the evidence showing that upon call of Leon McKim or Leon
Mead, or the stranger, that the time was too short to per-
mit such an examination without serious injury to the said
Leon McKim, or Leon Mead, by reason of said accident."

The question of law presented is, can the defendant be
held liable for the payment of plaintiff's bill, because of the
relationship which he sustained to the patient? The contention
of appellee seems to be that defendant is liable because young
Mead was a member of his family. But liability cannot be
predicated upon such a relation alone. *Blachley v. Laba,* 63
Iowa, 22. That a father is responsible for the maintenance
of his minor children is elementary, and we have adopted
the common-law rule, which holds a husband liable for the
support of his wife's minor children by a former marriage.
if he takes them into his family. *Bradford's Heirs v. Bod-
fish,* 39 Iowa, 681-684; *Gerdes v. Weiser,* 54 Iowa, 591.
While the doctrine of these cases is supported by modern
authorities, it must be confessed that the reason for the
rule at common law is lacking, since the wife now, upon
marriage, retains her separate property interests, and remains
liable for her separate debts. But, beyond this point, the
liability of the head of the family, merely as such, in respect
to matters of this kind, cannot be extended. Defendant was

not entitled in law to the custody or services of Mead. The latter was under no obligation to defendant, and defendant owed him no duty of support or maintenance. The relation between them was purely voluntary, and could be severed, at the option of either. The rule is that a master is not liable for medical attendance upon a servant, and that is the closest relation which can be said to have existed here. Schouler Domestic Relations, 617; 2 Kent Commentaries, 261; *Clark v. Waterman,* 7 Vt. 76; *Jesserich v. Walruff,* 51 Mo. App. 270. In the case of domestic servants, the rule is the same, though the courts apply it with greater strictness against the master where he has, either expressly or impliedly, requested the rendition of the service. See reference to Schouler, above. Neither can it be said that defendant's knowledge of, and acquiescence in the attendance of the physician, of itself, tends to fix his liability. Where one merely calls a physician to attend upon another, the law raises no implied promise to pay, on the part of the person making such request, unless the latter's relation to the patient is of such a character as imposes upon him the duty to supply a physician, and the relation of employer and employe is not sufficient to do this. *Meisenbach v. Cooperage Co.,* 45 Mo. App. 232; *Smith v. Watson,* 14 Vt. 332; *Crane v. Baudoine,* 55 N. Y. 256; *Manufacturing Co. v. Glover,* 29 Ga. 399. For the reasons given, the judgment is REVERSED.