Carrie **KELLEY**, Appellee,

v.

**IOWA DEPARTMENT OF SOCIAL SERVICES, Appellant.**

No. 55129.

Supreme Court of Iowa.

April 13, 1972.

Richard C. Turner, Atty. Gen., and Lorna Lawhead Williams, Sp. Asst. Atty. Gen., for appellant.

Donald H. Canning, Waterloo, for appellee.

UHLENHOPP, Justice.

The determinative issue in this appeal is whether a stepparent living with his stepchildren in Iowa has the same obligation as a natural parent to support them.

Mrs. Carrie Kelley has four children and one grandchild. Prior to December 20, 1970, the family in question consisted of these six individuals. Mrs. Kelley received child support for the four children from her former husband in the amount of $195 (all figures are monthly), public assistance in the form of aid to dependent children (ADC) for herself and the four children in an amount not shown, and a separate ADC grant for the grandchild of $76. (The grandchild's grant was not terminated by the Iowa Department of Social Services and will not be considered.) On December 20, 1970, Mrs. Kelley (her then surname does not appear) ceremonially married Mr. Kelley. Thereafter the family consisted of the seven individuals.

Mr. Kelley earned $501.63 net at the time of the hearing in this matter but he had income-connected expense for transportation and union dues of $44.87. He had been previously married and divorced, and his own seven children were with his former wife. He paid her child support of $247 ($217 at time of hearing), and she received ADC in addition in an amount not shown. He also had numerous debts on which he made some payments.

Upon learning of the marriage of Mr. and Mrs. Kelley, a caseworker investigated the ADC grant to Mrs. Kelley and her four children. Under the Department's regulations, the needs of Mrs. Kelley and the four children were computed at $320, of which Mrs. Kelley's former husband paid $195, leaving a remaining need of $125. Then in accordance with its regulations, the Department considered Mr. Kelley's income of $501.63, which it reduced, pursuant to the regulations, by the sum of $44.87 for his income-connected expense, $247 for his child support payment, and $64 for his living allowance in the family. This left $145.76, which was in excess of the remaining need of $125 of Mrs. Kelley and the four children.

Accordingly, the local caseworker recommended termination of the grant to Mrs. Kelley and the four children and gave notice that the Department proposed to terminate the grant. Mrs. Kelley took an administrative appeal and obtained assistance of counsel through the Black Hawk County Legal Aid Society. A hearing was held, attended by Mr. and Mrs. Kelley and their counsel, and the facts were brought out. After the hearing, the grant was terminated. (Payments have continued pending appeal in the courts.)

Mrs. Kelley appealed the Department's order to district court. See Code, 1971, § 239.7 ("The district court shall review the department's decision to determine its legality."). The district court reversed. Hence the present appeal by the Department from the district court judgment.

The Department claims, and Mrs. Kelley denies, that the income of Mr. Kelley is a "resource" of his stepchildren which is to be considered in computing the amount of the ADC grant.

In deciding the case, we confine ourselves to the situation in which a stepparent is living with the family. The Department does not claim the stepparent's income could be considered in other situations in the absence of actual contributions by him, and could not successfully so claim in the face of regulations which we will presently consider. 45 C.F.R. § 233.20(a) (3) (ii) (c), § 233.20(a) (3) (vi) (b).

We are confronted with several legal problems. What law is applicable—Iowa, federal, or both? Can the income of a stepparent be considered under applicable law? What obligation to support does a stepparent have under Iowa law? Must the Department, in considering a stepparent's income, allow deduction of the stepparent's debts? To what result does application of the legal principles lead us in the case at bar?

I. *Applicable Law.* Originally, Congress created a grant-in-aid program under which States could establish programs to aid needy families with children and obtain federal financial assistance in accordance with a prescribed formula. The States were not, of course, required to establish such programs, but if they did and desired federal cost-sharing, they had to follow guidelines set out in the federal statute and in the regulations promulgated thereunder by the United States Department of Health, Education, and Welfare (HEW). 42 U.S.C.A. §§ 601–610; 45 C.F.R. Part 203 et seq. The federal statute provides for termination of federal cost-sharing if a State does not abide by the guidelines. 42 U.S.C.A. § 604.

Iowa established an ADC program by statute, and the Iowa Department of Social Services promulgated regulations under that statute. Code, 1971, ch. 239; 1971 Iowa Dept'l Rules 928–933. HEW

approved the Iowa program and the United States and Iowa have been sharing the cost.

■ The present litigation involves a dispute over the Department's consideration of the income of a stepparent who is living with the family. In addition to federal and Iowa statutes and regulations relative to ADC, Iowa has substantive statutory and common law regarding the general obligation of stepparents to support stepchildren. We have no difficulty on the choice-of-law problem regarding the latter body of law—the substantive obligation of stepparents generally. Clearly, Iowa law on that subject is applicable. But the choice-of-law question is more puzzling as to the former body of law—the federal statute and regulations regarding the federal grant-in-aid program vis-a-vis the Iowa statute and regulations regarding the Iowa ADC program.

Most disputes of this sort arise in the federal courts. The state statute and regulations are there tested against the Federal Constitution, statute, and regulations. If the state statute or regulations are found wanting, the relief granted is usually an injunction against state use of federal funds or against further granting of federal funds to the state, or, if the state plan is unconstitutional, against continuation of that plan. Rosado v. Wyman, 397 U.S. 397 at 420–423, 90A S.Ct. 1207 at 1221–1223, 25 L.Ed.2d 442 at 460–461.

A constitutional challenge is not involved here, but Mrs. Kelley does charge in part that the Iowa statute and regulations do not square with the federal statute and regulations. She can make such a challenge in the Iowa administrative and judicial tribunals, and in such event the federal statute and regulations are to be applied. But if she is successful in that challenge, is the only relief an injunction against use of federal funds? We need not decide that interesting question because of the result we reach on the merits.

■ Mrs. Kelley also charges that the Iowa regulations are invalid under the Iowa statute. Manifestly as to that charge, we apply the Iowa statute. We think that if Mrs. Kelley is successful in that challenge in whole or in part, she is entitled to judgment requiring the Department to compute her grant without reference to the part of Mr. Kelley's income not in fact applied to the support of the family.

■ We thus hold that Iowa substantive law is to be applied in ascertaining the general obligation of a stepparent to support; the federal statute and regulations are to be applied in testing the Iowa statute and regulations, at least as to federal funding; and the Iowa statute is to be applied in testing the Iowa regulations. We proceed, therefore, to consider whether the income of a stepparent can be considered under the federal statute and regulations and under the Iowa statute.

II. *Can Stepparent's Income Be Considered?* The presence of a stepfather in the family or some other "man in the house" has resulted in a collision between a desire to require such a person to apply his income to the support of the spouse and children with whom he lives and a desire to see that needy children in fact receive support.

Two aspects of ADC are involved in cases of this kind: the *eligibility* of a family group for any ADC and the *amount* of ADC of an eligible family. Comprehension of the case requires understanding of both aspects.

(a) Eligibility. ADC eligibility depends on the existence of a "dependent child," who is defined thus in 42 U.S.C.A. § 606 (a):

The term "dependent child" means a needy child (1) who has been deprived of *parental* support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a *parent*, and who is living [in any

of several specified homes] and (2) [who is within a certain age]. (Italics added.)

The statute appears to require that a child be deprived of the care or support of his own *parent*. The statute uses the term "stepfather" or "stepmother" where such relationship is intended, but uses the term "parent" here. 42 U.S.C.A. § 606(a).

Various states, confronted with the problem of stepfathers and other men living with ADC families, attempted by statute to enlarge the term "parent" to include a substitute parent such as a stepfather or other man in the house. The United States Supreme Court ruled out such attempts unless the substitute parent was "an individual who owed to the child a state-imposed legal duty of support." King v. Smith, 392 U.S. 309, 329, 88A S.Ct. 2128, 2139, 20 L.Ed.2d 1118, 1132.

After King was decided, HEW promulgated regulations delineating the "state-imposed legal duty of support" in the step-parent situation in 45 C.F.R. § 203.1(a):

A State plan for aid and services to needy families with children . . . must provide that the determination whether a child has been deprived of parental support or care . . . will be made only in relation to the child's natural or adoptive parent, or in relation to a child's stepparent who is ceremonially married to the child's natural or adoptive parent and *is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children.* (Italics added.)

The regulation was upheld in Lewis v. Martin, 397 U.S. 552, 558–559, 90A S.Ct. 1282, 1285, 25 L.Ed.2d 561, 567 ("an obligation to support under state law must be of 'general applicability' to make that obligation in reality a solid assumption on which estimates of funds actually available to children on a regular basis may be calculated").

Turning to the Iowa statute and regulations on eligibility, we find them to be more favorable to ADC clients than the federal requirements. A "substitute parent" does not appear to be recognized in any form in Iowa as to eligibility of the family for ADC. The Iowa statute follows the federal counterpart, in Code, 1971, § 239.1(3):

A "dependent child" means a needy child [within a certain age] who has been deprived of *parental* support and care by reason of death, continued absence from home, or physical or mental incapacity or unfitness of either *parent*, and who is living [in any of several specified homes]. (Italics added.)

Under this statute, the Iowa Department of Social Services promulgated § 239.1(4) (*o*) of its regulations (1971 Iowa Dept'l Rules 929):

If a child is deprived of support or care of a *natural parent,* the presence in the home of an able-bodied *stepparent* does not disqualify a child for aid to dependent children, provided the child is in need and meets other eligibility factors. (Italics added.)

Certainly the Iowa statute itself is not contrary to federal law—it uses the terms "parental" and "parent" as the federal statute does.

■■ Is the Iowa regulation on eligibility limiting the term "parent" to a natural parent contrary to federal law or the Iowa statute? We think not. The commonly accepted definition of "parent" does not include stepparent unless the text of the statute indicates otherwise. Black, Law Dictionary (4th ed.). The statutes here do not indicate otherwise, for where Congress and the Iowa General Assembly meant "stepfather" or "stepmother" in this legislation, they used that word. Moreover, the purpose of the legislation is to

aid needy children. More needy children will receive aid if the presence of a step-parent does not render the family ineligible altogether, even though the stepparent's income is considered in computing the amount of the aid.

With this background, we proceed to the other aspect, the amount of the grant, which is really the problem here.

(b) Amount. So far as pertinent, the federal statute provides in 42 U.S.C.A. § 602(a) (7):

> A State plan for aid and services to needy families with children must . . . provide that the State agency shall, in determining need, take into consideration any other income and *resources* of any child. . . . (Italics added.)

Under this statute, the income of a parent is considered a "resource" of a child if that income is "actually *available* for current use on a regular basis." 45 C.F.R. § 233.20(a) (3) (ii) *(c)* (italics added). If the family is living together, the income of a parent is considered "available" to children under 21. 45 C.F.R. § 233.20(a) (3) (vi) *(b)* ("In family groups living together, income of the spouse is considered available for his spouse and income of a parent is considered available for children under 21."). Then a "stepparent" is equated to a "parent" in a limited situation—if the test previously quoted from § 203.1(a) of the federal regulation is met: "a child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children." The same section 203.1 goes on to state in subsection (b):

> (b) The inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in paragraph (a) of this section is not an accept-

able basis for a finding of ineligibility or for assuming the availability of income by the State. . . . [I.]n the consideration of all income and *resources* in establishing financial eligibility *and the amount of the assistance payment,* only such net income as is actually available, for current use on a regular basis will be considered, and *the income only of the parent described in paragraph (a) of this section will be considered available for children in the household in absence of proof of actual contributions.* (Italics added.)

See Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561.

Thus under federal law, the *resources* of a child are to be considered, the income of a parent is a resource of a child if it is *available* to the child, that income is available to a child if the parent and child are *living together,* and a *stepparent* is equated to a parent if, under general law of the state, the stepparent has a duty of support coextensive with the duty of a parent.

■ The Iowa statute does not deal specifically with this point but contains only a general provision similar to the federal statute. Code, 1971, § 239.5 ("In determining the amount of assistance, the county board shall take into consideration the income and *resources* of any child"—italics added). Hence the Iowa statute itself does not contravene federal law.

■ What about the Iowa Department's regulations? Section 239.1(4) *(o)* further states (1971 Iowa Dept'l Rules 929):

> The financial ability of a stepparent is to be considered as a resource and it is to be noted that income and property of stepparents is to be given the same consideration as that of parents.

Other rules of the Department are to the same effect. Employees' Manual, Iowa Dep't of Soc. Servs. (1970) V–5–29 ("his [stepparent's] income and resources shall be given the same consideration and treat-

ment as that of the natural parent"), V–5–43–44 (same). In this connection, the Department's regulations also state that a father (or stepfather) and the family are considered a family group unless he is "absent and estranged from the family," and he is not absent and estranged if he is "out of the home merely to secure employment or separated from his family only on the basis of a living arrangement." V–5–9, Employees' Manual, supra.

Testing the Department's regulation in § 239.1(4) (*o*) against federal law, we think that regulation would be over-broad if applied to some cases apparently within its terms. In the absence of actual contributions, that regulation can only be applied, so far as federal funds are concerned, to stepparents coming within § 203.1(a) of HEW's regulations which we have quoted—stepparents having an obligation to support under state law of general applicability, coextensive with the obligation of a natural parent.

We believe the same is true when the Iowa regulation is tested against the Iowa statute. While we are the arbiters of the meaning of the Iowa statute, the reasoning of the United States Supreme Court in interpreting the federal statute having corresponding language leads us to the same result that Court reached. The Iowa statute, like the federal counterpart, requires the Department to take into consideration the "resources of any child." We think that under the Iowa statute, in order to have a reliable basis for assuming a stepparent's income is in fact a resource of a child, such income can only be considered if, under substantive Iowa law generally, the stepparent has the same obligation to support the child as a natural parent. Applied to such cases only, the Iowa regulation is valid under the Iowa statute; beyond such cases the Iowa regulation cannot be applied in the absence of actual contributions. And so we approach the core of the case: what *is* a stepparent's obligation of support under substantive Iowa law?

III. *Stepparent's Obligation Under Iowa Law.* The Department actually considers a stepparent's income only in a limited situation—when the stepparent and stepchildren are living together—unless actual contributions by the stepparent appear. (Indeed, that is the limit to which even a natural parent's income can be considered. 45 C.F.R. §§ 233.20(a) (3), (ii) (*c*), 233.20 (a) (3) (vi) (*b*).) Consequently, that is really the only extent to which we are concerned in our inquiry into a stepparent's obligation to support under Iowa law. What is a stepparent's obligation in that limited situation?

■ We have a uniform statute on support obligations, and it applies to intrastate situations. Code, 1971, ch. 252A; Davis v. Davis, 246 Iowa 262, 67 N.W.2d 566. But the statute is not exclusive; common law duties also exist. Engelson v. Mallea, 180 N.W.2d 127 (Iowa). In the present case we find consideration of the statutory support obligation unnecessary. We turn to Iowa common law.

■ The Iowa decisions make clear that if a stepparent is living with his stepchildren (in loco parentis), he is obligated to support them. Minor Heirs of Bradford v. Bodfish, 39 Iowa 681; Gerdes v. Weiser, 54 Iowa 591, 7 N.W. 42; Menefee v. Chesley, 98 Iowa 55, 66 N.W. 1038; Holmes v. McKim, 109 Iowa 245, 80 N.W. 329; Boozel v. Boozel, 193 Iowa 78, 185 N.W. 85; Robinson v. Eaves, 203 Iowa 902, 210 N.W. 578; Rule v. Rule, 204 Iowa 1122, 216 N.W. 629; In re Adoption of Cheney, 244 Iowa 1180, 59 N.W.2d 685; Mason v. Zolnosky, 251 Iowa 983, 103 N.W.2d 752; Simpkins v. Simpkins, 256 Iowa 989, 129 N.W.2d 723; see Beasley v. Beasley, 159 N.W.2d 449 (Iowa). Thus, when a stepparent and stepchildren are living together, the stepparent has a support obligation in Iowa under law of general applicability, and that obligation is coextensive with a natural parent's obligation. The Department's consideration of a stepparent's income in that

situation is therefore valid—plus situations in which the stepparent makes actual contributions but does not live with the stepchildren. We regard it as immaterial that a stepparent may have power at common law to leave the family and terminate his obligation to support his stepchildren, for the Department then ceases consideration of his income in the absence of actual contributions. But as to his obligation in that situation, see Code, 1971, §§ 252A.2(3), 252A.3(1), and Gerdes v. Weiser, 54 Iowa 591, 593, 7 N.W. 42, 43 ("We have no occasion to determine the question whether the defendant could have been compelled to take his wife's child into his family and maintain it as his own.").

We also regard the Iowa Department's rule valid that a parent or stepparent is not to be considered out of the family merely if he is away to secure employment or on the basis of a living arrangement. Undoubtedly the stepparent remains liable to support his spouse and stepchildren in that situation. The Department's requirement that the stepparent be absent and estranged from the family is a reasonable one to prevent subterfuge whereby a parent or stepparent enjoys the benefits of the family but seeks to avoid the responsibilities.

We do not think a stepparent's support obligation is less than that of a natural parent because the latter remains liable to contribute to the support of a child who · is living with a stepparent. Even a natural parent is allowed the advantage of outside provisions for his child's support. 59 Am. Jur.2d Parent & Child § 81 at 174; 67 C.J.S. Parent & Child § 21(c) at 724.

IV. *Stepparent's Debts.* The Department contends that ADC parents and stepparents frequently have accumulated debts, often in large amounts. Further, that while the federal and Iowa laws specify the items which may be deducted from income in determining the amount available to the family, those laws make no provision for deduction of debts of either a parent or a stepparent.

It is true that those laws do specify the deductible items and do not provide for deduction of debts. As to a natural parent, at least, the reason for not considering debts is manifest. Consider a needy and indebted family consisting of several children and a natural parent who is earning wages. Without ADC, the parent's income would have to be used to support the family. If ADC were granted the family without consideration of the parent's income because of the debts, that income would be released to pay off the debts. Thus ADC would in effect subsidize the payment of creditors. But the purpose of ADC is to aid children, not creditors. The ADC situation cannot be equated to the divorce or separate maintenance case in which the debts of the parents are considered in setting alimony and child support payments.

Is the situation different as to an indebted stepparent earning income? The natural inclination for us is to decide that question on the merits as though we were writing the regulations. An argument can be made that a stepfather may have incurred his debts before he was even acquainted with the ADC mother. An argument can also be made that if an indebted man cannot marry an ADC mother without having his income taken into consideration in connection with her ADC grant, such couples will be tempted to live together unmarried. The latter argument, however, can also be applied to an unindebted man and an ADC mother; if they live together unmarried they have both his income and ADC, whereas if they marry, they stand to lose the ADC.

But we do not write the regulations. Our statute expressly authorizes promulgation of departmental rules and regulations. Code, 1971, § 239.18. Our review in this case is limited to determination of the "legality" of those regulations. § 239.7. The Department's regulations and rules

specifically authorize various deductions from income, but make no provision for deduction of debts of either a natural parent or stepparent. 1971 Iowa Dept'l Rules § 239.1(4) (*o*) at 929; Employees' Manual, supra, V–5–29, V–5–43, V–5–44. Are the Department's regulations on this point valid?

Essentially the question is whether the regulations are arbitrary and unreasonable. As to judicial testing of administrative regulations, this is stated in 2 Am.Jur.2d Administrative Law § 304 at 132–133:

> The requirement of reasonableness of an administrative regulation means no more and no less than that the regulation must be based upon reasonable grounds— that is, it must be supported by good reasons. The reasonableness of rules and regulations, and exemptions therein, is determined by their relationship to the statutory scheme they are designed to supplement, protect, and enforce. Reasonableness is determined in view of the stated objectives of the legislation, and if a regulation is within the purpose of the statute it is reasonable. . . .

> An administrator has a large range of choice in determining what regulations or standards should be adopted. It is not necessarily a valid objection to his choice that another choice could reasonably have been made, that experts disagreed over the desirability of a particular standard, and that some other method of regulation would have accomplished the same purpose and would have been less onerous. It is enough that the administrator has acted within the statutory bounds of his authority, and that his choice among possible alternatives adapted to the statutory end is one which a rational person could have made.

> In order to set aside a regulation, it must be clearly unreasonable. If reasonable minds may well be divided on the question, the administrator must be upheld. It must be shown that no reasonable administrator would have made such

a regulation and that it is so lacking in reason that it is essentially arbitrary.

And this is stated in 73 C.J.S. Public Administrative Bodies & Procedure § 104 at 424:

> The test of the validity of an administrative rule or regulation is not what might be done, but what can be done, under it, and only in a clear case will the court interfere and say that such a rule or regulation is invalid because it is unreasonable or because it is in excess of the authority of the agency promulgating it. Moreover, an administrative rule or regulation must be clearly illegal, or plainly and palpably inconsistent with law, or clearly in conflict with a statute relative to the same subject matter, such as the statute it seeks to implement, in order for the court to declare it void on such ground.

> It is only where an administrative rule or regulation is completely without a rational basis, or where it is wholly, clearly, or palpably arbitrary, that the court will say that it is invalid for such reason.

See also Schneberger v. State Bd. of Social Welfare, 228 Iowa 399, 291 N.W. 859.

█ We cannot say the Department's regulations have no rational basis. Our decisions and uniform support act draw no distinction between the support obligation of an indebted natural parent and that of an indebted stepparent living with the family. The obligation of both is not to support after payment of debts, but to support. Code, 1971, §§ 252A.2(3), 252A.3 (1); Minor Heirs of Bradford v. Bodfish, 39 Iowa 681, 684 ("being the step-father of the wards, he stood in *loco parentis,* and was responsible for their education and maintenance"); Rule v. Rule, 204 Iowa 1122, 1124, 216 N.W. 629, 629–630 ("He stood *in loco parentis* to them. His obligation to them, including the duty of support, was in legal effect *the same as that to his own children."* Latter italics added).

Thus without ADC, an indebted stepparent living with the family is required to support the family ahead of paying creditors, just as a natural parent is required to do. The Department could rationally provide that a stepfather should not be permitted by an ADC grant to apply his income to the discharge of debts rather than to his primary duty of family support, any more than a natural father should be permitted to do so.

Moreover, part of an ADC grant is for the common expenses of the whole family—such as housing, heating, and utilities—and all of the grant is in a lump sum. Thus a person marrying into an ADC family inevitably receives some of the benefits of the undifferentiated ADC funds coming into the family.

Again, the Department's regulations are in line with one of the dominant theses of this law: to employ all available resources before ADC is used. King v. Smith, 392 U.S. 309, 332, 88 S.Ct. 2128, 2141, 20 L.Ed.2d 1118, 1134 ("The pattern of this legislation could not be clearer. Every effort is to be made to locate and secure support payments from persons legally obligated to support a deserted child.").

While we might or might not write such regulations were the authority ours, we uphold the regulations as promulgated by the Department to which the matter was committed by the legislature.

V. *Result Here.* This family is living together, and the Department properly considered the stepfather's income without deduction of his debts.

The Department made correct adjustments in accord with its regulations. The child support paid by the children's natural father was properly taken into consideration, as were the child support payments made by Mr. Kelley for his own children, his expenses connected with earning his income, and a living allowance for him in the family. Employees' Manual, supra V–5–9, V–5–32, V–5–33, V–5–40, V–5–41, V–5–43, V–5–44, V–5–46, V–5–49. Mr. Kelley is not entitled to the "income disregard" feature, not being one of the individuals specified by 42 U.S.C.A. § 602(a) (8) (A) or Code, 1971, § 239.5. When the adjustments were made, the family was not entitled to ADC.

We hold that under federal and Iowa law, the Department properly terminated the ADC grant.

Reversed.

All Justices concur except RAWLINGS, MASON and HARRIS, JJ., who dissent.

RAWLINGS, Justice (dissenting).

I submit Iowa Department of Social Services Regulation § 239.1(4) (*o*) is arbitrary and unreasonable, therefore I respectfully dissent.

MASON and HARRIS, JJ., join in this dissent.