**Glenda Lorraine MESSIER, Individually and on behalf of Diane L. Cooper, et al.**

**v.**

**Gerard ZEILLER, Commissioner of the Department of Health and Welfare, and**

**Thomas Hooker, Director of the Division of Welfare, and New Hampshire Department of Health and Welfare.**

**Civ. A. No. 73–172.**

United States District Court, D. New Hampshire.

April 12, 1974.

H. Neil Berkson, Staff Atty., N. H. Legal Assistance, Keene, N. H., for plaintiffs.

John T. Pappas, Concord, N. H., for State of N. H.

## OPINION

BOWNES, District Judge.

This case arises out of an attempt by the New Hampshire Division of Welfare to terminate plaintiff's Aid for Families with Dependent Children (hereinafter AFDC) benefits after an award of said benefits by an administrative fair hearing panel (the Board of Appeals). Although the underlying controversy revolves around the complex question of a family's right to continued AFDC benefits upon the mother's marriage to a man who is not the natural father of the children and who does not adopt them,[1] the parties have narrowed the issues in this case considerably. In her original complaint, plaintiff raised five causes of action, pursuant to 42 U.S.C. § 1983, under the Fifth and Fourteenth Amendments to the Constitution of the United States, the Social Security Act, and regulations promulgated thereto. A three-judge court was appointed to hear plaintiff's claims. After a pretrial conference, plaintiff moved that an initial hearing in the matter be held before a single judge to determine whether defendants are bound, pursuant to the Social Security Act as amplified by 45 C.F.R. § 205.10, by the Board's decision to award benefits and therefore estopped from terminating those benefits. The motion having been granted, this question constitutes the sole issue before the court at this time. Jurisdiction is based on 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

### A. THE FACTS

The parties have submitted this case on stipulated facts. The complete stipulation appears below:

#### AGREED STATEMENT OF FACTS

1. Prior to June, 1970, plaintiff and her ten children received AFDC benefits from the State of New Hampshire Department of Health and Welfare, Division of Welfare, due to absence of parental support caused by the death of the father of her four Cooper children and the imprisonment of the father of her six LaFountaine children.

2. In June, 1970, plaintiff married her current husband, Bruce Allen Messier, and AFDC benefits for herself and her children were terminated at that time because of this marriage.

3. Bruce Allen Messier is not the natural father of any of the children named in plaintiff's petition and has not adopted them.

4. Plaintiff's AFDC benefits were terminated after her remarriage to Bruce Allen Messier in June, 1970, because, under the policy of the State of New Hampshire Division of Welfare, an otherwise needy and eligible child automatically is not considered "deprived of parental support" if he has a stepparent living in his home, regardless of the actual ability of said stepparent to provide support.

5. Bruce Allen Messier, the said stepfather of plaintiff's children, has provided support for his said stepchildren to the best of his ability and will continue to do so in the future.

6. The said Division's policy is found in said Division's public assistance manual § 2805, which has a requirement for AFDC that:

> A child is deprived of parental support or care by reason of death, continued absence from the home, or physical or mental incapacity of a parent

and § 2810, which defines a parent as:

> Parent means either the natural father or mother or the stepmother or stepfather.

7. The said Division's policy was derived from New Hampshire R.S.A. 546–A (supp), the Uniform Civil Liability for Support Act, which defines a parent

---

1. For treatment of this interesting problem, *see* Kelley v. Iowa Dept. of Social Services, 197 N.W.2d 192 (Iowa 1972).

as "'father' or 'mother' means either a natural or adopted father or mother or a stepfather or stepmother" and New Hampshire R.S.A. 167:2 (supp) Liability for Support, Recovery, which provides in part:

Assistance rendered under this chapter or RSA 161 to anyone having a father, mother, stepfather, stepmother, . . . may be recovered in an appropriate proceeding in the superior court . . . from either a father, mother, stepfather, stepmother . . . who are declared jointly and severally liable for such assistance.

8. New Hampshire R.S.A. 546–A (supp) and New Hampshire R.S.A. 167:2 (supp) were amended by the New Hampshire Laws of 1969, Chapter 478.

9. Previous to such amendment, New Hampshire R.S.A. 546–A:1 (supp) and New Hampshire R.S.A. 167:2 defined stepfather and stepmother as "The words 'stepfather' and 'stepmother' as used herein shall only apply to a person who has assumed the relation of a parent to his minor stepchild."

10. In January of 1972, plaintiff reapplied for AFDC benefits upon advice of counsel and, when said application was denied, requested a fair hearing.

11. At the time of her application in January of 1972, the sole support for herself and ten children came from her husband's net income of $70–80.00 per week, derived from two jobs, along with monthly Social Security benefits of $150.80, deriving from the death of her first husband.

12. The plaintiff received a fair hearing in April, 1972 by the Board of Appeals on her denial of AFDC, and such Board rendered a decision reestablishing AFDC benefits to plaintiff and her minor children, which held in pertinent part as follows:

The policy of categorically denying benefits under the AFDC program to a mother upon her remarriage without regard to the continuing financial needs or continued deprivation of parental support of the children is considered improper, inequitable and contrary to the very purpose of the program of Aid to Dependent Children.

13. In or about September 1972, pursuant to said Board of Appeals decision, plaintiff and her family began receiving financial assistance and medical benefits from defendants.

14. [Appears below No. 22 *infra.*]

15. On September 30, 1972, the said Division terminated AFDC benefits to one Dorothy Bezio and her minor children solely because Dorothy Bezio had remarried.

16. The said Dorothy Bezio filed a Petition for Temporary and Permanent Injunctive Relief and Declaratory Judgment [sic] with the Hillsborough County Superior Court to enjoin the said Division from terminating her AFDC benefits.

17. Dorothy Bezio's said petition further prayed that the Court declare New Hampshire R.S.A. 167:2 and New Hampshire R.S.A. 546–A:1 null and void, that automatic termination of her AFDC benefits violated 45 Code of Federal Regulations, Chapter II, Section 233.90(a) and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

18. Counsel for Dorothy Bezio and the said Division filed an Agreed Statement of Facts, stating that such Agreed Statement of Facts presented the issue of law "Is Chapter 478 of the New Hampshire Laws of 1969 valid?"

19. Said counsel agreed that the said *Bezio Case* be reserved and transferred to the New Hampshire Supreme Court and the Hillsborough County Superior Court (Charles J. Flynn, Presiding Justice) reserved and transferred such case to the New Hampshire Supreme Court. (Attached herewith is a copy of such reserved and transferred case.)

20. The said *Bezio Case* was decided by the New Hampshire Supreme Court on May 31, 1973, which held "We hold that Laws of 1969, Chapter 478 was constitutionally enacted" and remanded the case.

21. The Hillsborough County Superior Court has taken no further action, the parties have not requested further action, and the said *Bezio Case* is still pending in said Court.

22. Dorothy Bezio has not received AFDC benefits since the termination of such benefits on September 30, 1972.

14. On or about June 25, 1973, plaintiff was notified that she continues to be eligible for benefits and that her bimonthly check would be increased to $77.50 as of July 16, 1973, because of an increase in the number of the household.

23. The New Hampshire Legal Assistance is representing Dorothy Bezio and the plaintiff in the case at bar.

24. On June 29, 1973, Thomas L. Hooker, the Director of said Division and a defendant in the case at bar, issued a directive for the said Division stating in essence that as a result of the New Hampshire Supreme Court decision of May 31, 1973, in the said *Bezio Case*, that Public Assistance Manual Sections 2805 and 2810 continued to be in force. (A photo copy of such directive is herewith attached.)

25. As a result of the said directive of the said Thomas L. Hooker, on or about July 13, 1973, plaintiff was notified that she was no longer eligible for AFDC; her financial assistance would cease as of July 15, 1973; and her medical assistance would cease as of July 30, 1973. Said notice was signed by Robert G. Smith, a technician in the Keene District Office of the Division of Welfare. (See attached Notice of Decision dated July 13, 1973.)

26. There has been no change in plaintiff's factual circumstances since the time she was found eligible for benefits by the said Board of Appeals.

27. On or about July 20, 1973, plaintiff's attorney contacted defendant Hooker to request that plaintiff's benefits remain intact pending another fair hearing appeal and determination regarding the decision of July 13, 1973. Defendant Hooker advised plaintiff's attorney that said benefits could not continue pending a hearing because of Manual § 3500.51:

> When a fair hearing is requested because of termination, reduction, or suspension of assistance involving an *issue of policy* between the Division and the claimant, action to terminate assistance is taken immediately. (Emphasis in original.)

28. At the present time plaintiff's husband has a net income of approximately $88.00 per week from Homestead Woolen Mills, Swanzey, New Hampshire. Plaintiff now receives $248.00 per month in Social Security Benefits. Apart from AFDC, this constitutes the sole support for plaintiff, her husband, and her ten children. This income was taken into account by defendants in calculating plaintiff's latest grant of assistance, as well as her earlier grant.

29. Except for the disputed issue of the stepparent residing in their home, plaintiff and her ten children remain in every way eligible for AFDC.

30. This Honorable Court issued a temporary injunction against defendant enjoining defendant from enforcing its public regulation found in assistance manual § 2810 and plaintiff has continued to receive AFDC until the present time.

31. [Refers to the exhibits appended to the stipulation.]

## B. THE CLAIMS

When the Board of Appeals originally decided that the plaintiff was entitled to AFDC benefits,[2] the Board was charged by law to consider:

> The agency's interpretation of the law, and the reasonableness and equi-

---

**2.** The following federal regulations were in effect when plaintiff's cause of action arose and during the time this case was before the Board of Appeals. For a comparison with the 1973 regulations, which the Department contends should control, *see* notes 6 and 7 and accompanying text *infra*.

tableness of the policies promulgated under the law . . . . 45 C.F.R. § 205.10(a)(3)(iv)(*b*).

The written decision of the Board of Appeals clearly shows that the Board was aware of and fully considered the relevant factual and legal issues in the case. Agreed Statement of Facts, *supra*, Exhibit A. The regulations then in effect further provided:

> Decisions by the hearing authority rendered in the name of the State agency . . . shall be binding on the State and local authority. 45 C.F.R. § 205.10(a)(15).

Plaintiff contends that, absent a change in law or fact, the Department is foreclosed from challenging the Board's determination—both under the Code of Federal Regulations and under general principles of res judicata. The Department claims that Bezio v. Neville, 305 A.2d 665 (N.H., decided May 31, 1973), represents a change in the law;[3] that the Director of the Division of Welfare, not the Board of Appeals, makes policy decisions; that the 1972 regulations, if they apply, do not make the Board's decision binding on the Department; and that the 1973 regulations apply in this case.

## C. THE MERITS

 The Department's first claim is that Bezio v. Neville, 305 A.2d 665 (N. H., decided May 31, 1973), represents a change in law justifying a policy reversal which would deny plaintiff AFDC benefits. Such a position is clearly untenable. In *Bezio* the New Hampshire Supreme Court was concerned *only* with the question of whether the "stepparent" law, which became effective on September 1, 1969, was constitutionally enacted. *See* New Hampshire Laws 1969, Ch. 478, amending NH RSA 167:2 and NH RSA 546-A:1. In holding that the law was constitutionally enacted, the

court made no comment on the constitutionality of the substantive law.

The stepparent law had been on the books for almost four years when *Bezio* was decided. The Board's decision clearly indicates that when the Messier ruling was made, it was aware of and considered the stepparent problem. *See* Agreed Statement of Facts, *supra*, Exhibit A. *Bezio* represents no change in New Hampshire's substantive law of stepparent liability, and the Department may not use that decision as a basis for denying AFDC benefits.

 The Department's second claim is that, under the appropriate New Hampshire statutes, the Director of the Division of Welfare, and not the Board of Appeals, has policy-making powers. NH RSA 126-A:11 provides that

> [r]ules and regulations of the department . . . shall become effective *when promulgated by the director* of the appropriate division, with the approval of the commissioner. [Emphasis added.]

NH RSA 126-A:9-a, which deals with the Board of Appeals, provides:

> It shall be the duty of the board of appeals to conduct fair hearings on appeals in connection with any programs of the division of welfare.

Although the statutory scheme is ambiguous, the controlling federal regulations distinctly give the Board of Appeals policy-making powers. *See* 45 C.F.R. § 205.10(a)(3)(iv)(*b*), set out *supra*. The state statute, if inconsistent with the federal regulations, must, of course, fall under the Supremacy Clause. However, the Department's own regulations demonstrate that its understanding of the state statute is consistent with the federal regulations. The Department's Manual § 3500.1 clearly provides for policy review by the Board of Appeals.

 The Department's third and major contention is that the Board of

3. The parties have stipulated that there has been no change in plaintiff's factual circumstances since the ruling of the Board of Appeals. Agreed Statement of Facts, *supra*, at ¶ 26.

Appeals decision is not binding on the agency. The question of whether or not an administrative determination is to be accorded res judicata effect is not an easy one. Its resolution lies in a consideration of the relevant legislative intent and the general principles of res judicata. As long as due process requirements are met, the power of the legislature to prescribe the binding effect of the administrative determination is clear. Therefore, when legislative intent is discernible, it must guide this court's hand. E. Schopflocher, The Doctrine of *Res Judicata* in Administrative Law, 1942 Wisc.L.Rev. 5, 198 (1942). In this case the legislative intent could not be clearer. In no uncertain terms the federal regulations indicate that state Boards of Appeal are to consider policy matters and that the decisions of these Boards are "binding" on state officials. . 45 C. F.R. § 205.10(a)(3)(iv)(*b*) and (a)(15). The regulations could hardly be more precise.

Although hard and fast rules of res judicata are not generally applied to an agency charged with administration of a broad social program, *see* I. Groner and H. Sternstein, Res Judicata in Federal Administrative Law, 39 Iowa L.Rev. 300, 303–06 (1954), the decision in controversy here was made after a full consideration by the body charged with making such determinations. The hearing lasted two days. Plaintiff's Brief at 3 n. 3. Furthermore, although the hearing was held in April of 1972, the Board did not announce its decision, and plaintiff did not receive benefits, until September of 1972, nearly five months later. This delay was clearly in violation of the Department's own regulations, which provide:

The appeals board is responsible for rendering a conclusive decision within

ten days (10) following the hearing. Manual, § 3500.13.

and

Not more than 60 days may lapse between the date upon which a request for a hearing is received and the date of the Division's administrative action necessary to comply with the decision of the Appeals Board is taken, including notification to client of the decision. Manual, § 3500.10. *See also* 45 C.F.R. § 205.10(a)(11) (1972); and *cf.* 45 C.F.R. § 205.10(a)(16) (1973).

At the least, this unusually lengthy consideration attests to the seriousness with which the Board deliberated. Although given ample opportunity at the hearing and during the five month period of consideration, the Department chose not to submit an opinion from the Attorney General. Even though there is no statutory provision for appeal of the Board's decision,[4] the Department's brief makes clear that, when, as here, a claim is made that the agency has not observed the law, the "decision is reviewable under New Hampshire law." Defendant's Brief at 15–17.

■ Since the Department elected not to supply the Board with an advisory opinion by the Attorney General and since the Department chose not to appeal the Board's ruling, or at least ask for a reconsideration by the Board,[5] I hold that it may not now collaterally attack the decision by the promulgation of inconsistent regulations. *See* Roman Cleanser Co. v. Murphy, 194 N.W.2d 704, 386 Mich. 698 (1972). To hold otherwise would be to destroy the integrity of the system. Administration of the State's welfare program in a completely equitable manner is a difficult, if not impossible, task. For the program to continue to operate properly, it must have the confidence of its administra-

---

4. NH RSA 541 provides for judicial review of agency action only where the right of review is authorized by statute; and NH RSA 126–A, the chapter creating the Department of Health and Welfare, does not provide for such review.

5. Admittedly, the procedure for review of action taken by the Board of Appeals is not clear. However, the Department's actions do not indicate a sincere effort to obtain meaningful review before unilaterally reversing the Board's ruling.

tors, as well as its benefactors. This confidence cannot be maintained unless the participants in the dispute resolving mechanism (the fair hearing procedure) can rely on the authority of the decision arrived at through this mechanism.

The Department's last contention is that the 1973 amendments to the Code of Federal Regulations should control this case. These amendments, which became effective October 15, 1973, change the 1972 regulations which were in effect at the time of the events in this case. Replacing 45 C.F.R. § 205.-10(a)(3)(iv), which gave state Boards of Appeal the power to review the policy and equities of state welfare programs, is 45 C.F.R. § 205.10(a)(12),[6] which provides:

The hearing shall include consideration of:

(i) An agency action, or failure to act with reasonable promptness, on a claim for financial or medical assistance, which includes undue delay in reaching a decision on eligibility or in making a payment, refusal to consider a request for or undue delay in making an adjustment in payment, and discontinuance, termination or reduction of such assistance;

(ii) Agency decision regarding:

(A) Eligibility for financial or medical assistance in both initial and subsequent determinations,

(B) Amount of financial or medical assistance or change in payments,

(C) The manner or form of payment, including restricted or protective payments, even though no Federal financial participation is claimed.

45 C.F.R. § 205.10(a)(15), which made the Board's decisions binding on state and local authorities, was amended to read:[7]

Decisions by the hearing authority shall:

(i) In the event of an evidentiary hearing, consist of a memorandum decision summarizing the facts and identifying the regulations supporting the decision;

(ii) In the event of a State agency de novo hearing, specify the reasons for the decision and identify the supporting evidence and regulations.

Under this requirement no persons who participated in the local decision being appealed shall participate in a final administrative decision on such a case.

■ Linguistically there can be no doubt that the new regulations neither give the Boards of Appeal policy-making powers nor make their decisions binding on state and local officials. In this manner, they differ markedly from the 1972 regulations. However, as is evident from what has already been said, I feel that the 1972 regulations—those in effect at the time the Board decision was made—should govern the res judicata effect of the Board's decision. This is not a situation where, *in between* the events and the hearing, a change in procedural regulations governing the hearing has occurred. Here, the Division of Welfare seeks to avoid the effect of a decision, binding when rendered, by invocation of a change in regulations *after* the hearing. Retroactive application of regulations in this type of situation is unfair for a number of reasons. Plaintiff expected the Board's favorable ruling to be final and binding. In her eyes, an administrative reversal of the

---

6. 45 C.F.R. § 205.10(a)(3)(iv) is substantially the same as 45 C.F.R. § 205.10(a)(12) except that it includes subsection (iv)(*b*). This subsection, giving the state Boards of Appeal policy-making powers, is set out in the text above. *See* text accompanying note 2, *supra*.

7. The critical language, missing from the amended regulation, is set out in the text above. *See* text accompanying note 2, *supra*.

award would clearly amount to a capricious divestment of justifiable expectations. Moreover, it is clear that the Board of Appeals thought the decision would be binding; and, as suggested earlier, a reversal of this nature could seriously undermine the integrity of the fair hearing procedure. Finally, the impact of such agency action on the public cannot be discounted. Surely, revocation of benefits under these circumstances does not portray the image of fair-handedness so critical to public acceptance and support of these programs.

■ . In addition, it should be noted that the changes in the 1973 amendments certainly do not evince a clear intention to alter the nature or scope of State Board authority. The comprehensive redrafting of section 205.10 seems to be mainly directed to providing the opportunity for a fair hearing at a level below the State Appeals Board. The State Board may then either hear the case de novo or sit as an appellate review board. *See* 45 C.F.R. §§ 205. 10(a)(1)(ii) and (a)(6)(iii). Omission of language giving local hearing boards policy determination powers and making their decisions binding may merely reflect this policy change. Certainly it is understandable that the Secretary of HEW would desire to relieve the State Boards of an undoubtedly increasing caseload; and it is just as certain that he would not want to bind state officials by policy determinations made at local fair hearings. Therefore, even if the new regulations are applicable, I find that the Board of Appeals decision is binding.

In summary, I find that, under the federal regulations then in effect, the New Hampshire Board of Appeals ruling that plaintiff and her family are entitled to AFDC benefits was within the scope of its authority and is binding on the New Hampshire Department of Health and Welfare. The parties have agreed that since the ruling there has been no change in plaintiff's factual circumstances, and I rule that the *Bezio*

case cannot justify a reversal of the Board's ruling.

For the foregoing reasons, plaintiff is entitled to a permanent injunction restraining the Department and its officers from denying her family AFDC benefits.

So ordered.