## HOPKINTON *v.* WARNER.

One O., residing in the town of H., but having no legal settlement in any
town in this state acquired since Jan. 1, 1840, died in 1845, leaving a
widow and a minor daughter, one C. The widow and child continued
to reside in H. till 1849, when the former married with one L., then
residing and having a legal settlement in the town of W. The mother
and child then removed to the house of said L., and continued to reside
there until the child C. married with one R., who had no legal settle-
ment in any town in this state at that time, nor at any time since. *Held*,
that the town of W. is chargeable for supplies furnished to said C. and
her minor children, as paupers.

ASSUMPSIT, by the town of Hopkinton against the town of Warner,
to recover for supplies furnished by Hopkinton to Cynthia Ryan and
her minor children, alleged to be paupers, having their settlement in
Warner, to the amount of $38.62, as stated in the account annexed to
the writ.

It was agreed by the parties that said Cynthia and her said children
were paupers standing in need of relief; that the supplies, as charged,
had been furnished by the plaintiff; that proper notices, under the
statute, had been served upon the defendants according to law; and
that the sum charged was reasonable. Said Cynthia is the daughter
of one John C. Ordway, who formerly lived and died in Hopkinton, in
1845. He had not, before his death, since 1840, acquired any settle-
ment in said Hopkinton, or in any other town. At the time of the
death of her father, said Cynthia was about ten years old, and contin-
ued after his death to live with her mother until 1848 or 1849, when
her mother married with one Daniel Law, who lived and had a settle-
ment in Warner, acquired since 1840, and then said Cynthia, with her
mother, removed to the house of said Law to live, and she continued
to have her home there until some two or three years after, when she
married one Samuel Ryan, who had no settlement in any town in this
state at that time, or at any time since.

It was agreed that a proper judgment may be ordered by the court
for the plaintiffs, or the defendants, in accordance with the opinion of
the court upon the questions of law raised on the foregoing facts.

*Tappan & Mugridge*, for the plaintiffs.

The only question raised, as we understand it, is, whether said Cyn-
thia, under the facts stated in the case, acquired a settlement in Warner.
We contend that she did, and suggest,—

I. That her own father, Ordway, having no settlement in this state,
neither her mother nor Cynthia acquired or obtained one through him.

II. That the mother of Cynthia, by her marriage with Law, took the settlement which he had at the time of said marriage, which was in the town of Warner. Gen. Stats., ch. 73, sec. 1; *Merrimack* v. *Hillsborough*, 19 N. H. 552; *Madbury, ex parte,* 17 N. H. 570.

III. Cynthia, being a minor child, and unemancipated at the time of said marriage, and having no other settlement, took the settlement of her mother, acquired as aforesaid in Warner. Gen. Stats., ch. 73, sec. 1; *Merrimack* v. *Hillsborough*, 19 N. H. 552.

IV. The marriage of Cynthia with Ryan, who had no settlement in any town in this state, did not affect her settlement previously acquired.

V. The provisions of ch. 1, sec. 17, of the laws of 1868,—being enacted long after the settlement of the pauper had been acquired as aforesaid,—can have no application to this case.

*Eastman, Page & Albin,* for Warner.

Upon the facts stated in this case, two questions arise: First, Did Cynthia Ryan, by the marriage of her mother to Daniel Law, of Warner, gain a settlement in that town? and, second, If she did gain such a settlement, did it exist at the time these supplies were furnished?

I. Upon the first question, we submit that she gained no settlement by that marriage. The statutes alone regulate and fix all settlements of paupers, and they are to be construed strictly. There are no equities between towns in such matters. At the time of the marriage, neither the mother nor daughter had a settlement in any town. That marriage, however, gave a settlement to the mother, by virtue of the statute by which the wife takes the settlement of her husband; but it gave no settlement to the daughter, for the statute extends only to the wife. If it had been intended to give a settlement to children of the wife by a former husband, it would have so said. Again, the pauper gained no settlement by the marriage of her mother to Law, because she was at that time emancipated. The death of her father, and the marriage of her mother, worked the emancipation of the daughter. Such was the law of emancipation at that time; and the statute of 1868, ch. 1, sec. 17, was simply declaratory of what the law was. And an emancipated child can gain no derivative settlement.

II. But suppose that, by the marriage of the mother, a settlement was gained by the pauper,—still, we submit that that settlement did not exist at the time the supplies were furnished. The settlement of paupers is to be determined by the statutes, as they stand at that time. There is nothing like a vested right for support that can be gained, either by a pauper or a town. Thus, the statute abolishing all settlements acquired prior to 1820; and, again, the statute of 1868, providing that no town shall be liable unless upon a settlement acquired after 1840. These statutes annul all settlements gained prior to the times fixed, and are the law governing all cases arising thereafter. So with the provisions of the seventeenth section of the same chapter of the statute of 1868. If there was any doubt about the law before, it was

settled by that section, which swept away all settlements gained by unemancipated children, whenever it should appear that the father was dead, and the mother again married, or the minor herself married;— all of which facts exist in this case, the supplies having been furnished subsequently to the passage of the act of 1868.

*Mugridge,* for the plaintiffs, in reply.

I. It is admitted that the mother of the pauper, by her marriage with Law, gained a settlement in Warner. The General Statutes, part 2, sec. 1, ch. 73, provide that " legitimate children shall have the settlement of their father, if any he has within this state, otherwise the settlement of their mother, if any she has, until they gain a settlement of their own ; but in case of divorce, when the parents have no settlement, and the custody of the children is left in the father, they shall not follow the settlement which the mother may acquire by any subsequent marriage;" the first clause of this provision establishes the general principle that the settlement of legitimate children during their minority shall follow that of the parent, and therefore, in this case, would give the pauper the settlement of her mother in Warner. *Parsonfield* v. *Kennebunkport,* 4 Greenl. 50, and *Plymouth* v. *Freetown,* 1 Pick. 197, are directly in point ; and the exception in the latter clause of that provision, by implication, establishes the principle that a subsequent marriage of the mother shall have the same effect, except only in the particular case specified. *State* v. *Ferguson,* 33 N. H. 430. If the view of the defendants' counsel were correct as to the effect of the subsequent marriage of the mother, the exception made in the statute referred to would be entirely unnecessary and superfluous. For in that view, a subsequent marriage in all cases would have the effect which the exception provides for only in a particular case.

II. The general question, as to the power of the legislature to abolish settlements, does not arise in this case. Sec. 17, ch. 1, Laws of 1868, does not purport to abolish any settlements then actually existing. It only establishes principles to govern in the future the gaining of settlements. But the settlement of the pauper in this case had then become complete and fixed, and therefore was not affected by that statute ; and that settlement remaining, the liability of Warner continued for all the legal consequences of it, though arising after the passage of that act. It is correct and sound, as a general proposition, that no statute ought to have a retrospective effect; and it is also true, that courts will not presume that such effect was intended by the legislature, unless there is something in the language of the new provision, and apparent on its face, which clearly and unmistakably gives it a retroactive operation. *Dunbarton* v. *Franklin,* 19 N. H. 262 ; *Atherton* v. *McQuestion,* 46 N. H. 211; *Colony* v. *Dublin,* 32 N. H. 434; *Boston & Maine Railroad* v. *Cilley,* 44 N. H. 578 ; *Dickerman* v. *Lowell,* 36 N. H. 366 ; *Wood* v. *Oakley,* 11 Paige 403 ; *Butler* v. *Palmer,* 1 Hill 325 ; *Johnson* v. *Burrill,* 2 Hill 238 ; *Dash* v. *Van Kleech,* 7 John. 499 ; *People* v. *Columbia,* 10 Wend. 362.

And the act of 1868 is not a declaratory act, but an original enactment, making express and clear alterations, amendments, and repeals of existing laws. There certainly is nothing in the phraseology of the statute of 1868, which indicates or even hints at the idea that the legislature in its passage ever intended to do any more than to establish a rule which was to attach itself to the future action of parties, to regulate and control their rights in time to come. There is nothing ambiguous about it, but its language is clear and explicit, and precisely such as would be employed to establish a rule for future action, and such as never would have been employed to give it a retrospective character; and it is only by its interpretation in a manner contrary to its words, and an utter perversion of their natural and obvious signification, that this statute can be distorted into the character sought to be given it by the other side. Counsel for the defendants undertake in their brief to draw an analogy between the statute in question, and those statutes heretofore passed in this state abolishing settlements acquired before certain times. But we submit that an examination of the language and terms used in these different acts will discover a clear and certain intent upon the part of the legislature to give them an application to such *past settlements*, which is not manifested in the statute of 1868, which, as we have before stated, by its terms, was only to apply to the future. In construing some of these statutes, the court have been particular to act in such a manner as not to determine that the legislature ever intended to violate either the ordinary rules of legislation by the passage of retrospective laws, nor the 23d article of the bill of rights in our constitution. See *Pembroke* v. *Epsom*, 44 N. H. 114, and cases there cited.

FOSTER, J. The question is, Where, if anywhere, is the legal settlement of Cynthia Ryan and her minor children, for whom supplies have been furnished by the town of Hopkinton?

By the statute of 1868, 1 Sess. Laws, ch. 1, sec. 23, it is provided that no town shall be liable for the support of any person, unless he, or the person under whom he derives a settlement, shall have wholly gained a settlement therein since the first day of January, 1840.

Cynthia Ryan was the legitimate daughter of John C. Ordway, who lived in Hopkinton, and died there in 1845,—prior to which time, and subsequent to 1840, he had acquired no legal settlement in Hopkinton or elsewhere. Cynthia, therefore, derived no settlement from her father.

By the terms of the Gen. Stats., ch. 73, sec. 1, in case they derive no settlement from their father, legitimate children have the settlement of their mother, if any she has, until they gain a settlement of their own. Such has been the law ever since December, 1828. Laws, ed. of 1830, ch. 3. An exception to this general rule was grafted upon the law at the time of the passage of the General Statutes, applying only to the case of divorced parents; in which condition it is provided that, if after divorce the father retains the custody of such children, they shall

not follow the settlement which the mother may acquire by any subsequent marriage.

The widow of John C. Ordway, the mother of Cynthia, married Daniel Law in 1848 or 1849, who lived and had a settlement in Warner, acquired since 1840. Cynthia then lived with her mother and step-father, in Warner, until her own marriage with Samuel Ryan, two or three years later.

It would seem to be entirely clear, then, that Cynthia acquired the settlement of her mother, which was the settlement in Warner derived from her husband.

But it is contended by the defendant town that the effect of this subsequent marriage of Mr. Ordway's widow was to emancipate his daughter; and that, by reason of such emancipation, she did not take the settlement which her mother thus acquired; and the town of Warner rely upon sections 16 and 17 of chapter 1, Laws of 1868, in support of this position. The law thus invoked provides that " a minor, if emancipated, shall not take an after acquired settlement from the parents." And, " a minor shall be emancipated, within the meaning of this act, by the death of the father    *    *    and the subsequent marriage of the mother."

This law is not, however, as the defendant town contends, declaratory merely of a former law, common or statutory, but its provisions were first applied to the settlement of paupers by the act of 1868, long after Mrs. Ordway and her daughter Cynthia had acquired the settlement of Daniel Law.

" The statutes alone regulate and fix all settlements of paupers, and they are to be construed strictly," is the language of the defendants' counsel (and so is *Meredith* v. *Canterbury*, 3 N. H. 80, and other cases), and it is a truthful proposition, which destroys the defendants' case; because, until the statute of 1868, the settlement of legitimate minor children was not lost by any act of emancipation.

That statute cannot have retrospective or retroactive effect.

Prior to the passage of that act, the settlement of a child, entitling it to support from a town, depended not at all upon the fact that the mother, by subsequent marriage, might have lost her ability to support the child, any more than such settlement, and consequent town liability, were affected by the mother's inabilty from poverty, merely.

The universally recognized principle of the common law, that a husband is not bound to support his wife's child by a former husband, may practically work the emancipation of the child; and so it may perhaps be said that the 17th section of chapter 1 of the act of 1868 is but declaratory of the common law in that respect; but the trouble with the defendants' case is the inapplicability of that law to the facts before us.

In the present case, and in others of similar character prior to 1868,

the minor legitimate child of a widow acquired the mother's settlement (if she had no other), entirely irrespective of any condition of emancipation, or the reverse.

Cynthia Ordway, having, then, acquired the settlement of her mother in Warner, did not lose it by her own subsequent marriage with a man who had no settlement; for the law then (as it is now) was, that " every settlement shall continue until a new settlement is gained." Rev. Stats., ch. 65, sec. 4; Gen. Stats., ch. 73, sec. 5. See *Merrimack* v. *Hillsborough*, 19 N. H. 552.

In accordance with these views, and by the provisions of the case, there must be                                *Judgment for the plaintiffs.*