Strafford
No. 6780

MARGARET M. MORPHY v. T. HARVEY MORPHY

January 31, 1974

*Alfred Catalfo, Jr.* and *Daniel M. Cappiello (Mr. Cappiello* orally) for the plaintiff.

*Fisher, Parsons, Moran & Temple (Mr. Harold D. Moran* orally) for the defendant.

GRIMES, J. The question presented by this appeal is whether the trial judge abused his discretion in renewing an order for alimony which had expired by force of RSA 458:19. *Morphy v. Morphy,* 112 N.H. 507, 298 A.2d 580 (1972).

The parties were divorced on July 3, 1962, after 20 years of marriage by a decree which incorporated their stipulations which in part provided for the payment to the plaintiff by the defendant the sum of $75 per week until her remarriage. The defendant continued to pay $75 per week until July 1971 although the order had expired in 1965. RSA 458:19; *Morphy v. Morphy supra.* After the remand in the previous transfer of this case, a hearing was held following which, on April 4, 1973, the order for payment of $75 weekly was "extended and renewed as of November 1971" and defendant was ordered to pay plaintiff $75 per week "payments to begin as of November 1971". All questions of law raised by defendant's exception to this order were transferred by *Morris,* J.

There were no children of the marriage, but plaintiff

had a son by a former marriage. Plaintiff is now 59 years old and remains unmarried. She testified that because of a hiatus hernia, a bladder condition and arthritis in her fingers, she is unable to work and has been forbidden by her doctor to try. She owns the family home in Farmington and a cottage in Acton, Maine, both free from mortgages. She rents the cottage so she can pay the taxes. She testified she had a 1967 Thunderbird which because of excessive repairs she was advised to trade. She had to cash some bonds to purchase a 1973 Ford Maverick. She gave her son between $21,000 and $25,000 for the purchase of a business from the defendant and his partner. Her son paid her $75 a week until he died in 1970 and his wife who now owns the business has been helping plaintiff to live by giving her $40 per week and buying clothes for her. It appears that the daughter-in-law carries plaintiff on the books of the business as an employee. Plaintiff testified she has had to cash in bonds and draw money out of the bank in order to live. She still has $4,000 in the bank.

Defendant at the time of the original decree had an income of about $18,000 per year from another business, Alfred Footwear. Under the stipulation, he retained ownership of this business, and an interest in a grocery store and in the business which was later sold to plaintiff's son. After the divorce, defendant remarried and five children have been born of this marriage. His wife also has a child of hers living with them. In 1968 they purchased a home in South Berwick, Maine for $32,000 and there remains about $11,000 due on a mortgage. Sometime after the divorce, defendant sold his stock in Alfred Footwear to a conglomerate and continued to operate it as a division of the conglomerate at a salary which by 1969 had risen to $50,000 per year in 1969, 1970, and 1971. He also had an additional income from other sources of about $6,000. Thereafter, the conglomerate because of financial difficulties entered into an arrangement under Chapter 11 of the Bankruptcy Act and defendant's salary was set at $40,000 by the court until his employment was terminated in July 1972. He was unable to find employment in the shoe industry so he in association with others started an auto-

mobile business in Portsmouth, New Hampshire, with a Subaru franchise. He invested $7,500 in the business and has $65,000 in certificates of deposit pledged to secure a line of credit essential to the business. He draws $300 a week less withholding from the business and has an interest income from the certificates of deposit of about $3,900 per year. In addition, he has some income from his 50% interest in the grocery store which he claims he puts back into the business. He has $7,500 on deposit with the clerk of superior court to secure payment of any arrearages on the alimony order.

The defendant contends that the trial court "failed to exercise his discretion" and made an order that it is impossible for defendant to comply with.

Since this case involves the question whether the order which was terminated under RSA 458:19 should be extended or renewed, the defendant does not have the burden of showing changed circumstances such as to justify a reduction or termination of the order, but rather the plaintiff has the burden of showing that "justice requires a renewal or extension, and if so, what justice requires as to amount". *Taylor v. Taylor,* 108 N.H. 193, 230 A.2d 737 (1967). The question is what in the light of all the circumstances then existing would be just, and the prior agreement of the parties would be one of the circumstances entitled to consideration. *Id; Morphy v. Morphy supra.*

Although the financial circumstances of the defendant have changed drastically in the last two years, his income is not significantly different from what it was when the original agreement and order were made and his assets are substantially more since by the original agreement and decree he was left with little other than the businesses. He has remarried and has five children of his own who must be considered. *See Peterson v. Buxton,* 108 N.H. 77, 227 A.2d 779 (1967).

The trial court has wide discretion in these matters and, while subject to review, its findings "can be set aside only if the evidence demonstrates clearly an abuse of discretion". *Collette v. Collette,* 108 N.H. 469, 238 A.2d 598 (1968). Nothing appears in the record which would indicate that

the trial court misapplied the burden of proof or failed to consider all the relevant circumstances and we cannot say that the order was "clearly an abuse of discretion". *Id.*

*Exceptions overruled.*

All concurred.