Ruth Morse ARCHIBALD, Individually and on behalf of her four minor children and on behalf of all others similarly situated

v.

Frank WHALAND, in his capacity as Commissioner of the Department of Health and Welfare, et al.

Civ. A. No. 75–245.

United States District Court, D. New Hampshire.

Aug. 18, 1976.

Richard A. Cohen, N. H. Legal Assistance, Manchester, N. H., Raymond J. Kelly, N. H. Legal Assistance, Keene, N. H., for plaintiffs.

Wilbur A. Glahn, III, State of New Hampshire, Concord, N. H., for defendants.

## OPINION

BOWNES, District Judge.

This is an action for declaratory and injunctive relief alleging infringement of constitutional rights and violation of federal statutory rights. It is brought under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 with jurisdiction conferred by 28 U.S.C. § 1343.

Plaintiff Ruth Morse Archibald and intervenor Patricia Ann Lawrence, on behalf of their respective children, seek a permanent injunction restraining the enforcement of defendants' policy under which Aid to Families with Dependent Children (hereinafter AFDC) and medical assistance are denied to an otherwise eligible needy minor solely on the ground that his or her recipient parent has married or remarried and there is a stepparent living in the home. Plaintiffs claim that this policy violates their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment and also contravenes the Social Security Act, 42 U.S.C. § 601 *et seq.* (hereinafter Act). Defendants deny any constitutional violation and assert that, under New Hampshire law, stepparents are liable for the support of stepchildren to the same extent as natural parents are liable for the support of their children and that these stepchildren, like natural children living with their married parents, are not entitled to AFDC benefits and medical assistance. Defendants claim, therefore, that the Division's policy falls within the narrow confines of 45 C.F.R. § 233.90(a) and *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Because the plaintiffs' constitutional claims are not insubstantial, this court has pendent jurisdiction to hear and decide the statutory allegation, and I must do so as a single judge prior to the convening of a three-judge court for the constitutional issues. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct.

1372, 39 L.Ed.2d 577 (1974); *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

On September 25, 1975, this court preliminarily enjoined the enforcement of defendants' policy as to plaintiff Ruth Morse Archibald. Intervenor Patricia Ann Lawrence's motion for a preliminary injunction was granted on March 30, 1976. Both parties have submitted cross-motions for summary judgment. F.R.Civ.P. 56.

### THE FACTS

The parties have stipulated to the following facts:

"1. Prior to October 15, 1974 Plaintiff Ruth M. Archibald was receiving medical and financial assistance for herself and her two minor children, Jamey Morse and Stephen Allen Morse.

"2. Effective October 15, 1974 Plaintiff Ruth M. Archibald was informed that she and her children were not eligible for medical and financial assistance.

"3. The reason for the termination of the aforesaid benefits to Plaintiff Ruth A. Archibald and her two children of a previous marriage was her marriage to Henry L. Archibald.

"4. Henry L. Archibald is neither the natural father of the two Morse children or the third child Russell Tood Sinosky named in the Complaint dated August 11, 1975, nor has he adopted them.

"5. Plaintiff Ruth M. Archibald and the aforementioned three children did not receive any financial or medical assistance from the Division of Welfare from October 15, 1974 to September 15, 1975.

"6. Since September 16, 1975 Plaintiff Archibald and her three minor children have received financial assistance payments in the amount of $76 per month until April 15, 1976.

"7. As of April 16, 1976 the grant to Plaintiff Archibald was increased from $76 per month to $82 per month.

"8. The denial of Plaintiff Archibald's financial assistance and medicaid benefits, which became effective in October of 1974, was based on the policy of the Division of Welfare which provides that a child living in his home with a natural parent and a stepparent is not 'deprived of parental support and care' within the meaning of the Social Security Act.

"9. Plaintiff Ruth M. Archibald did not appeal the denial of benefits to the fair hearings board.

"10. . . . [A]s of the date of the issuance of the Preliminary Injunction concerning Plaintiffs Ruth M. Archibald and her three minor children (i. e., September 25, 1975), in the absence of the stepparent in the home and, using Plaintiffs' proposed formula, with the stepparent in the home, Plaintiff Archibald and her children were financially eligible for medical and financial assistance.

"11. Since the issuance of the Preliminary Injunction dated September 25, 1975 the income of Henry L. Archibald, Sr. has increased and therefore the amount of income available to the family has increased accordingly. . . .

"12. Prior to September 16, 1975 (with respect to financial assistance) and to September 30, 1975, with respect to medical assistance, [intervenor] Patricia Ann Lawrence received medical and financial assistance from the Division of Welfare on her own behalf and on behalf of her minor children. The number of minor children living at home during the period in which Plaintiff Patricia Ann Lawrence received assistance (1966–1975) fluctuated. At present, five children are living with her. Three of these children (by a previous marriage) are Plaintiffs in this action.

"13. On September 15, 1975 the Plaintiff received notice from the Defendants' Concord District Office that her benefits were being terminated due to her reconciliation with her husband John Lawrence.

"14. In December, 1975 Plaintiff Lawrence reapplied for assistance at the Concord District Office.

"15. On January 21, 1976 Plaintiff Lawrence was informed that she and her three

children by a previous marriage were ineligible for assistance because there was a stepparent in the home.

"16. The reason for the denial of assistance was the same policy referred to in Stipulation Number 8 above.

"17. On February 2, 1976 Plaintiff Lawrence requested a fair hearing on the denial of assistance. No hearing has as yet been held.

"18. . . . [A]s of the date of intervention in this case, March 29, 1976, Plaintiffs Lawrence and her three minor children, in the absence of a stepparent in the home and, using Plaintiffs' proposed formula, with the stepparent in the home, were financially eligible for medical and financial assistance.

\*     \*     \*     \*     \*     \*

"20. Plaintiffs Lawrence and her children did not receive assistance until May 1, 1976 because the parties were attempting to reach the agreement on the issue of whether assistance should be determined in accordance with Plaintiffs' proposed formula. The April assistance (Plaintiff Lawrence intervened on March 29, 1976) will be made together with the June payment."

## THE ISSUE

The issue is whether New Hampshire by "State law of general applicability . . requires stepparents to support stepchildren to the same exten[t] that natural or adoptive parents are required to support their children." 45 C.F.R. § 233.90(a).

New Hampshire, by its policy of refusing AFDC benefits to children with a stepparent ceremonially married to the recipient parent, has made such children ineligible for welfare assistance. The stepparent rule thus places stepchildren in the same position as children whose two natural parents are living with them; neither of these groups of children is eligible for AFDC. While this court does not sit in judgment of the wisdom of the policy, I note, parenthetically, that it encourages cohabitation without the benefit of matrimony. Nevertheless, because the stepparent rule renders otherwise qualifying recipients flatly ineligible, it bears no relationship to a determination of need. Therefore, the actual financial situation of the plaintiffs is irrelevant to the decision of this case. The question is simply whether New Hampshire may declare ineligible for AFDC otherwise qualifying children solely because the recipient parent marries or remarries and the stepparent lives in the same house with the children.

■ New Hampshire participates in Aid to Families with Dependent Children, a categorical assistance program authorized by the Social Security Act, 42 U.S.C. § 601 *et seq.*; NH RSA 161, 167. The administration of the AFDC program is "a scheme of cooperative federalism," *King v. Smith, supra,* 392 U.S. at 316, 88 S.Ct. 2128, by which federal grants are made to the states for aid and services to needy families with dependent children. Because New Hampshire has chosen to participate, it is bound to administer the program in compliance with federal law. *Van Lare v. Hurley,* 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *King v. Smith, supra,* 392 U.S. 309, 88 S.Ct. 2128.

Eligibility for the AFDC program must be determined in accordance with federal law. *Carleson v. Remillard,* 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); *King v. Smith, supra,* 392 U.S. 309, 88 S.Ct. 2128. Aid to needy families provides assistance to "needy dependent children." 42 U.S.C. § 601. For purposes of this case, a "dependent child" is defined as

a needy child (1) who has been deprived of parental support or care by reason of the . . . continued absence from the home . . . of a parent, and who is living with his father [or] mother . . in a place of residence maintained by . . . relatives as his or their own home, and (2) who is (A) under the age of eighteen, . . . .. 42 U.S.C. § 606(a).

Whether or not a child has been deprived of parental support or care may be determined by reference only to

the child's natural or adoptive parent, or in relation to the child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extend [sic] that natural or adoptive parents are required to support their children. 45 C.F.R. § 233.90(a).

This regulation was adopted by the Department of Health, Education and Welfare (hereinafter HEW) after the *King* decision and has been upheld by the United States Supreme Court as a valid implementation of the Act. *Lewis v. Martin,* 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970).

The New Hampshire Division of Welfare defines a "parent" as

the natural father or mother or the stepmother or step-father. N.H. Public Assistance Manual § 2810.

This means, according to defendants, that once the recipient parent marries or remarries and the child thereby acquires a stepparent, the child is no longer deprived of "parental support" and is, therefore, no longer eligible for AFDC.

The Welfare Department's policy, in order to comply with the HEW regulation, must be based on state law of "general applicability" which makes a stepparent liable "to the same extent" as a natural parent for the support of the dependent child. There is little helpful case law interpreting the exact meaning of these two requirements. However, the history of the regulation and HEW's interpretation of it cast some light.

In 1968 in the *King* decision, the Supreme Court held invalid an Alabama "substitute father" regulation on the grounds that it defined "parent" in a manner inconsistent with the Act. Pursuant to its regulation, Alabama had denied AFDC benefits to the children of a woman who "cohabitated" with an able-bodied man, the "substitute father." The Court concluded that Congress had intended AFDC aid to benefit any child deprived of the support that is legally due the child from "a 'breadwinner,'

'wage earner,' or 'father,' . . . ." *King v. Smith, supra,* 392 U.S. at 328, 88 S.Ct. at 2139.

Congress must have meant by the term "parent" an individual who owed to the child a state-imposed legal duty of support. . . . [T]he kind of breadwinner Congress had in mind was one who was legally obligated to support his children. *King, supra,* 392 U.S. at 329, 88 S.Ct. at 2139.

In *Lewis v. Martin, supra,* 397 U.S. at 558–559, 90 S.Ct. at 1285–1286, the Court found that HEW

might reasonably conclude that only he who is as near as a real or adoptive father would be has that consensual relation to the family which makes it reliably certain that his income is actually available for support of the children in the household. HEW may, in other words, reasonably conclude that an obligation to support under state law must be of "general applicability" to make that obligation in reality a solid assumption on which estimates of funds actually available to children on a regular basis may be calculated.

\*      \*      \*      \*      \*      \*

Our decision in *King v. Smith* held only that a legal obligation to support was a necessary condition for qualification as a "parent"; it did not also suggest that it would always be a sufficient condition. We find nothing in this regulation to suggest inconsistency with the Act's basic purpose of providing aid to "needy" children, except where there is a "breadwinner" in the house who can be expected to provide such aid himself.

The amicus curiae brief filed by HEW in the *Lewis* case is the only comprehensive interpretation of the regulation that has been published by HEW. In it, HEW proposed a tripartite test for determining whether state law meets the requirements of the regulation. The support obligation of stepparents must be

[1] a duty of general applicability [2] which he could be compelled by court

order to fulfill even after he has deserted or abandoned the household and [3] regardless of whether the children would otherwise receive AFDC payments. HEW Amicus Curiae Brief at 23.

HEW urged the Court to look to whether the "obligation of support purportedly imposed on . . . the stepfather is an actual, enforceable obligation." *Id.* at 18. The State must provide legal means which "would permit either the mother, the children or the State to enforce civilly the purported obligation of the . . . nonadopting stepfather." *Id.* at 25–26. Further, the obligation should not be "avoidable merely by leaving the home," *id.* at 19, nor should it apply solely in the welfare situation.

■ Although the three-pronged test proposed by HEW was not explicitly adopted by the Court in *Lewis,* the Court gave "the deference due the agency charged with the administration of the Act, . . . ." *Lewis, supra,* 397 U.S. at 559, 90 S.Ct. at 1286 (cites omitted). Therefore, while this test is not binding on this court, it must be given due weight. However, the Supreme Court has spoken, albeit indirectly, on the second prong of the test; whether or not the support obligation survives desertion or abandonment of the family by the stepparent. The Supreme Court dismissed the appeal of *Kelley v. Iowa Department of Social Services,* 197 N.W.2d 192 (Iowa 1972), for want of substantial federal question. *Id.,* 409 U.S. 813, 93 S.Ct. 170, 34 L.Ed.2d 69 (1972). The appeal, one of right under 28 U.S.C. § 1257(2), raised the issue of whether Iowa's treatment of a stepparent's income and resources was valid under 45 C.F.R. § 233.90(a) (then 45 C.F.R. § 203.10):

> when it is considered that Iowa law holds that a stepparent has a support obligation under the law of general applicability coextensive with a natural or adoptive parent's obligation only when the stepparent and stepchildren are living together. *Kelley v. Iowa Department of Social Services,* Civil No. 72–5070 (Jurisdictional Statement).

The Supreme Court's dismissal was an "adjudication of the case on its merits" and is binding upon this court. *Hicks v. Miranda,* 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975). Therefore, I must conclude that whether or not New Hampshire law obligates stepparents to support stepchildren only when they are living together is irrelevant.

Federal and State courts have applied the three-pronged test outlined in the HEW amicus brief, and, in all cases but one, have found state law insufficient to meet the HEW regulation.

In most federal cases, it has been clear that the state law did not impose a sufficient support obligation on stepparents to comply with the HEW regulation. *Rosen v. Hursh,* 464 F.2d 731 (8th Cir. 1972); *Boucher v. Minter,* 349 F.Supp. 1240 (D.Mass. 1972); *X v. McCorkle,* 333 F.Supp. 1109 (D.N.J.1970), *aff'd as modified sub nom. Engelman v. Amos,* 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971); *Ojeda v. Hackney,* 319 F.Supp. 149 (N.D.Tex.1970), *vacated in part* 452 F.2d 947 (5th Cir. 1972); *Solman v. Shapiro,* 300 F.Supp. 409 (D.Conn.), *aff'd* 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969).

In Indiana, the issue of the sufficiency of the state law was litigated twice. *Grubb v. Sterrett,* 315 F.Supp. 990 (N.D.Ind.), *aff'd* 400 U.S. 922, 91 S.Ct. 187, 27 L.Ed.2d 182 (1970); *Gaither v. Sterrett,* 346 F.Supp. 1095 (N.D.Ind.), *aff'd* 409 U.S. 1070, 93 S.Ct. 688, 34 L.Ed.2d 660 (1972). In *Grubb,* a three-judge court rejected the proposition that "*any type or degree* of legal duty [was] sufficient to comply with the DHEW regulation . . . ." and ruled that "a criminal child neglect statute does *not* impose a general legal obligation of support upon someone who did not otherwise have a civil obligation to support a child." *Grubb, supra,* 315 F.Supp. at 994. [Emphasis in original.] *See Borkman v. Commissioner of Social Welfare,* 128 Vt. 561, 268 A.2d 790 (1970).

In Indiana, the legislature has not enacted any statutes granting a stepchild a civil remedy against a stepparent for

nonsupport. A mother cannot obtain a civil support order against the stepfather of children born to her of a former marriage. A divorce decree can order the husband to support only the legal children of the marriage and cannot order him to support his stepchildren. A decree of temporary legal separation cannot order a stepfather to support his stepchildren. *Grubb, supra,* 315 F.Supp. at 994–95. (Cites omitted.)

Clearly, the court in *Grubb* applied the civil enforcement test proposed by HEW. In response to *Grubb,* Indiana enacted a law by which

a stepfather is bound to support, if able to do so, his wife's children if such children reside with him and if without support from such stepfather they would be children eligible for aid under this chapter. *Gaither, supra,* 346 F.Supp. at 1098 n. 3.

In rejecting the defendants' contention that this law comported with the HEW regulation, the court noted that the law was limited to stepfathers who lived with children who would otherwise be eligible for public assistance and that the law "provid[ed] no remedy for enforcement of the purported obligation . . . ." *Id.* at 1101. In this case, the law failed all three parts of the test advanced by HEW as well as being sexually discriminatory.

In state cases, the New York courts have found the New York stepparent support laws not to be of general applicability because they required stepparents to support stepchildren only when the stepchildren were receiving or were liable to receive public assistance. *Application of Slochowsky,* 73 Misc.2d 563, 342 N.Y.S.2d 525 (1973). *See Jennings v. Lavine,* 79 Misc.2d 176, 359 N.Y.S.2d 473 (1974); *Uhrovick v. Lavine,* 43 A.D.2d 481, 352 N.Y.S.2d 529, *aff'd* 35 N.Y.2d 892, 364 N.Y.S.2d 890, 324 N.E.2d 360 (1974).

In *Slochowsky,* the court rejected the contention that the Uniform Support of Dependents Law (USDL) created a general support obligation on stepparents even though a "child" eligible for support was defined to include a "stepchild."

[USDL] is a vehicle for the conduct of essentially an enforcement support proceeding where the petitioner seeking support lives outside the county or state where the respondent obligor resides. Proceedings . . . are maintainable only between residence of different counties, or reciprocating states . . . . . *Slochowsky, supra,* 342 N.Y.S.2d at 531.

The court rested its decision that New York's law was not one of general applicability on the fact that the New York law required support for stepparents only when the child would otherwise become a public charge.

A general obligation of support imposed upon a natural or adoptive father does not turn on the child's dependence upon public assistance, and, indeed, exists regardless of the child's own resources and those of his mother. *Id.* at 532.

In *Bunting v. Juras,* 11 Or.App. 297, 502 P.2d 607 (1972), the Oregon court considered a statute which required both that the child be "in need" and that the stepparent reside with the child for the stepparent to be liable for the support of the child. The court held that the statute did not create generally applicable stepparent support liability.

The single case finding compliance with 45 C.F.R. § 233.90(a) is *Kelley v. Iowa Department of Social Services, supra,* 197 N.W.2d 192.[1] Initially, the Iowa court limited its inquiry as to the stepparent's obligation to situations where the stepparent and stepchildren were living together, and it found that Iowa common law follows the *in loco parentis* rule making stepparents living with stepchildren liable for their support.

Thus, when a stepparent and stepchildren are living together, the stepparent has a support obligation in Iowa under law of

---

1. It is irrelevant that *Kelley* was not concerned with eligibility for AFDC, but with assumptions of the availability of stepparent income. The same test, derived from 45 C.F.R. § 233.90(a) essentially applies to both considerations.

general applicability, and that obligation is coextensive with a natural parent's obligation. . . . We regard it as immaterial that a stepparent may have power at common law to leave the family and terminate his obligation to support his stepchildren, for the Department then ceases consideration of his income in the absence of actual contributions. *Id.* at 199–200.[2]

Under the *Hicks v. Miranda* rule, the *Kelley* holding is binding; therefore, despite the avoidability of a stepparent's obligation, the obligation is one of general applicability.

■ From the above summary, I conclude that there are two basic, although not exclusive, tests by which this court may decide whether the support obligation under New Hampshire law is one of general applicability and whether it makes a stepparent liable to the same extent as a natural parent for the support of a dependent minor. First, has the state provided the means by which the child, the recipient parent or the state can enforce the purported support obligation to the benefit of the child? Second, is the purported support obligation limited to situations where otherwise the state would be obliged to provide public assistance?

### THE NEW HAMPSHIRE LAW

Under the common law in New Hampshire, it was "universally recognized . . . that a husband is not bound to support his wife's child by a former husband . . ." *Hopkinton v. Warner,* 53 N.H. 468, 472 (1873). *See also Ela v. Brand,* 63 N.H. 14 (1883). Whatever duty there is to support a dependent child, it has a statutory source. *State v. Cote,* 104 N.H. 345, 186 A.2d 832 (1962); *Kelley v. Davis,* 49 N.H. 187 (1870) (a natural parent's obligation to support a natural child is statutory). *See Stetson v. Stetson,* 103 N.H. 290, 171 A.2d 28 (1961); *Trow v. Trow,* 95 N.H. 529, 68 A.2d 538 (1949) (under statutory authority, the Superior Court may make orders as to the custody and support of children when, if the husband and wife are living apart, a divorce either is pending or has been denied.)

In 1955, New Hampshire adopted the Uniform Civil Liability for Support Act, NH RSA 546–A, which specifically includes stepparents as persons liable for the support of dependent minors. As originally adopted, a stepparent was liable for the support of a stepchild only if he or she had "assumed the relation of a parent to his or her stepchild." In 1969, the Legislature, deleted the above-quoted words, thus rejecting the *in loco parentis* rule. The law now provides:

546–A:1 *Definitions.* As used in this chapter:

\* \* \* \* \* \*

IV. "Child" means either a natural or adopted child or a stepchild.

V. "Father" or "mother" means either a natural or adopted father or mother or a stepfather or stepmother.

546–A:2 *Liability.* Every person whose income or other resources are more than sufficient to provide for his or her reasonable subsistence compatible with decency or health owes a duty to support or contribute to the support of his or her wife, husband, child, father or mother when in need.

■ Plaintiffs emphasize that the 1969 amendment was accomplished at the behest of the New Hampshire Division of Welfare pursuant to an effort to comply with the HEW regulation. They argue that the legislative intent in enacting RSA 546–A was not to place a stepchild in the same position vis-a-vis support rights as a natural child, but to superficially comply with the HEW regulation so as to avoid State welfare obligations to children whose recipient parents have married or remarried. In support of this argument, plaintiffs seek to have this court look at the actual practice in the New Hampshire courts to see if, in reality, "the bread is

---

**2.** It is interesting to note that later the court held that an Iowa court cannot order, as part of a divorce, a stepparent to support his or her stepchildren. *In re Marriage of Carney,* 206 N.W.2d 107 (Iowa 1973).

actually set on the table." *Lewis, supra,* 397 U.S. at 559, 90 S.Ct. at 1286. However, the practice followed in the New Hampshire courts is basically irrelevant to this case so long as the Legislature has created a legal obligation of support which is enforceable and generally applicable and which does not differentiate between stepparent and natural parent. This court cannot, when faced with a question of the sufficiency of a legal obligation, examine the actual practice of the state courts; I must assume that the New Hampshire courts and the New Hampshire Division of Welfare abide by the laws of this state.[3]

NH RSA 546–A:2 creates a support obligation only when a spouse, child (or stepchild) or parent (or stepparent) is *in need.* The first issue in this case is whether the *in need* provision of the statute should be broadly or narrowly construed. If it is given a broad interpretation so that a stepchild's need is seen as relative to his or her "station" in life, then this provision creates a support obligation for stepchildren that is similar in nature to the one created by New Hampshire's domestic relations laws. If, on the other hand, *in need* means destitute or in necessitous circumstances, New Hampshire has created a support obligation that exists only in a welfare situation, and the question remains as to whether natural children have a broader support right from a different statutory source.

The need of a dependent is critical in determining a parent's criminal liability under New Hampshire's criminal support provisions. NH RSA 460:23 (Supp.1975) governs Neglect by Husband or Father.

> If any husband or father shall neglect to maintain his wife or children when such wife or children are dependent upon his earnings for support, or neglects his employment or misspends his earnings so as not to provide for the support of his wife or children, he shall be guilty of a misdemeanor.

*See also* NH RSA 460:24, 28 (Supp.1975).[4] This statute makes a father criminally liable for failing to maintain needy dependent children, *State v. Carr,* 107 N.H. 477, 225 A.2d 178 (1966), whether or not they are adopted, *Clapp v. Brighi,* 93 N.H. 431, 43 A.2d 151 (1945), or illegitimate, *Cote, supra,* 104 N.H. 345, 186 A.2d 832. While it does not extend criminal liability to stepparents at all, it is clear that it does extend criminal liability only to parents of neglected needy children.

> The statute under which the complaint before us is brought (RSA 460:23 (supp)) states plainly that "any . . . father" who neglects to support his needy children shall be penalized. *Cote, supra,* 104 N.H. at 347, 186 A.2d at 834.

The court defined "necessitous circumstances" as being "in layman's language, without food, clothing or shelter." *Id.* at 346, 186 A.2d at 833.

The criminal statutes were intended by the Legislature to complement the civil support provisions rather than to create new duties.

> . . . [I]t was the violation of an existing legal duty of the parent that the enactment of the statute was intended to prevent by declaring it to be a crime. *State v. Byron,* 79 N.H. 39, 41, 104 A. 401, 402 (1918).

Both the criminal and civil statutes have the same purpose, the support and care of neglected or abandoned minor children. *Healy v. McQuaid,* 89 N.H. 117, 193 A. 231 (1937). The criminal statutes do not create any enforceable support rights in dependent minors.

There is, then, the prerequisite that a child be needy or destitute before a natural father can be held criminally liable under RSA 460:23. There is no such prerequisite

---

**3.** I note that plaintiffs have not alleged that it would be futile to try to enforce NH RSA 546–A. The fact that it has not been enforced, as alleged, could be due to a variety of reasons, only one of which is judicial unwillingness to extend and/or enforce support liability.

**4.** Before 1973, New Hampshire had a law governing desertion of a "minor child under the age of sixteen years in destitute or necessitous circumstances . . . ." NH RSA 571:2. This was repealed effective November 1, 1973.

for a court to order support of a child under NH RSA chapter 458, New Hampshire's domestic relations statute. Under several sections, the Superior Court is granted the power to make support and custody orders for the children. NH RSA 458:16 IV (Supp. 1975) allows the Superior Court, upon the filing of a libel for divorce, annulment or a decree of nullity, to make an order

> [d]etermining the temporary custody and maintenance of any minor children of the marriage as shall be deemed expedient for the benefit of the children; . . . .

It is clear that this provision protects only offspring of a marriage regardless of need. NH RSA 458:17 (Supp.1975) provides for final support and custody orders pursuant to a decree of divorce or nullity.

> . . . [T]he court shall make such further decree in relation to the support, education, and custody of the children as shall be most conducive to their benefit,
> . . . .

Again, no showing of need is necessary; on the contrary, a dependent may seek and obtain support even though he or she has ample resources available. *Popik v. Popik,* 115 N.H. 668, 348 A.2d 341 (1975); *Payette v. Payette,* 85 N.H. 297, 157 A. 531 (1931); *Ott v. Hentall,* 70 N.H. 231, 47 A. 80 (1899). The last provision, NH RSA 458:35, gives the Superior Court, after the filing of a divorce libel and when the husband and wife are living apart, the power to "make such order as to the custody and maintenance of the children as justice may require . . . ." Under this section also, " 'the paramount and controlling consideration' is the welfare of the children involved." *Lemay v. Lemay,* 109 N.H. 217, 218, 247 A.2d 189, 190 (1968).

Although the Civil Liability for Support Act, NH RSA chapter 546–A, purports to create a support obligation of general applicability, it makes need a prerequisite before any right for support can arise under it. While this statute applies equally to natural, adoptive and stepchildren, it is by its words limited in its potential application to situations of need. The New Hampshire Supreme Court implicitly accepted this interpretation of RSA 546–A in *Noyes v. Noyes,* 108 N.H. 462, 237 A.2d 692 (1968).

In *Noyes,* the Court strictly limited the statute by reading into it a requirement enacted in a separate support provision some eight years after RSA 546–A. The Court concluded that

> a husband who is willing . . . to support his wife in his own home is not required to "contribute to the support of his . . . wife" who is living apart without justifiable cause. *Noyes, supra,* 108 N.H. at 465, 237 A.2d at 693.

By this holding, the New Hampshire Supreme Court has implied that not only must there be a need, but that the need must arise involuntarily. The support obligation does not exist solely by virtue of the relationship and the need. The Court has also indicated a reluctance to hold individuals liable for the support of named relatives beyond the duties imposed by common law. *See Ott v. Hentall, supra,* 70 N.H. 231, 47 A. 80. Under the statute as construed by the New Hampshire Supreme Court, I cannot construe RSA 546–A broadly, and I rule that "when in need" means when in necessitous circumstances and is not solely relative to the status and wealth of the parties. Stepchildren have, therefore, a somewhat limited right to support from their stepparents, which is entirely dependent upon a showing of "need."

Because natural children also must show "need" in order to qualify under NH RSA 546–A, the question is whether there are other statutes by which natural children, but not stepchildren, gain support rights which are not contingent upon a showing of need. As noted above, the criminal support statutes apply only in situations of destitution. NH RSA 460:23; *Cote, supra,* 104 N.H. 345, 186 A.2d 832. It may also fairly be assumed that they are limited in their application to natural or adoptive parents and children. A criminal statute must be strictly and narrowly construed. *McBoyle v. United States,* 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931), and the statutes refer only to parents and children. *See Carr, supra,* 107 N.H. 477, 225 A.2d 178;

*Cote, supra,* 104 N.H. 345, 186 A.2d 832. It follows, therefore, that only natural children have the benefit of the protection afforded by New Hampshire's criminal support statutes. However, as noted above, these statutes do not create support rights; they simply allow the State to use criminal sanctions to compel support when it is required by law.

It is more relevant, therefore, to look to what enforceable support rights natural children have under other statutory provisions. Under the New Hampshire domestic relations statute, NH RSA ch. 458, there are three sections governing court ordered support decrees. NH RSA 458:16 IV (Supp. 1975) is expressly limited to "children of the marriage," while NH RSA 458:17 (Supp. 1975) is not so explicit in its limitation. However, the New Hampshire Supreme Court has implied that NH RSA 458:17 extends only to natural children.

> The obligation to provide child support is recognized by the laws of this State as a fundamental facet of paternity. RSA 458:17 (Support of Children); RSA ch. 546–A (Uniform Civil Liability for Support) . . . . Requiring parental support of children is deeply embedded in the reasonable policy that the financial burden should rest on the responsible individuals rather than on society at large insofar as possible. *Watts v. Watts,* 115 N.H. 186, 337 A.2d 350 (1975) (cites omitted).

Again, while NH RSA 458:35 is not expressly limited to natural children, it is similar in wording to NH RSA 458:17 and has been held to apply to "the children of parents who are living apart." *Lemay, supra,* 109 N.H. at 218, 247 A.2d at 190. This court is not aware of any cases which extend any of these statutes to stepchildren.

I also note that in several of the divorce cases that have reached the New Hampshire Supreme Court, the Court has disregarded the existence of stepchildren as a factor to be considered in determining the amount of support due, *see Morphy v. Morphy,* 114 N.H. 86, 315 A.2d 631 (1974), while legitimate offspring from a new marriage are considered. *Peterson v. Buxton,* 108 N.H. 77, 227 A.2d 779 (1967). *Cf. Fortuna v. Fortuna,* 103 N.H. 547, 176 A.2d 708 (1961). I conclude, therefore, that stepchildren have no enforceable rights under the New Hampshire domestic relations statute. The protection of the support provisions extends only to natural or adopted children.

It is to be noted also that, while there is no requirement that a child show need before he or she comes within the domestic relations statute's coverage, the support sections apply only when a divorce libel has been filed. The question arises then, whether a natural child under New Hampshire law is protected to a greater extent than stepchildren. While both a stepchild and a natural child have an enforceable support right when they are in need, neither is protected when there are no necessitous circumstances and the parents have not filed a divorce libel. However, only the natural child is protected when there is a divorce pending, regardless of need and regardless of whether the parents are living together (NH RSA 458:16 IV) or living apart (NH RSA 458:35). Further, the Court's power to protect a natural child continues even after a divorce has been denied, *Stetson, supra,* 103 N.H. 290, 171 A.2d 28 or the parents resume marital relations, *Benjamin v. Benjamin,* 99 N.H. 117, 106 A.2d 187 (1954).

I conclude that the protection afforded children under the domestic relations statute is greater in scope than that offered by chapter 546–A. In New Hampshire, the trial judge has wide discretion in a divorce case in determining the amount of child support, *Comer v. Comer,* 110 N.H. 505, 272 A.2d 586 (1970); *Fortuna, supra,* 103 N.H. 547, 176 A.2d 708 and may consider factors other than need. *Popik, supra,* 115 N.H. 668, 348 A.2d 341; *Payette, supra,* 85 N.H. 297, 157 A. 531; *Ott v. Hentall, supra,* 70 N.H. 231, 47 A. 80. It is clear from the case law that, in each case, the question of support is a relative one with "the station of the minor in society, . . . the progress of society, and the attendant requirements upon the citizens of to-day," *Payette, supra,* 85 N.H. at 298, 157 A. at

532, constituting major factors in determining support orders. Further, the domestic relations support statute is specifically concerned with the welfare of the children; a natural parent is liable for the support of the children of the marriage with an eye to the child's benefit rather than need.

The Uniform Civil Liability for Support Act, NH RSA ch. 546–A, outlines the criteria by which a court is to determine the amount of support due a child "in need."

> When determining the amount due for support the court shall consider all relevant factors including but not limited to: (a) the standard of living and situation of the parties; (b) the relative wealth and income of the parties; (c) the ability of the obligor to earn; (d) the ability of the obligee to earn; (e) the need of the obligee; (f) the age of the parties; (g) the responsibility of the obligor for the support of others. NH RSA 546–A:5.

These criteria follow closely those applied by the courts under the domestic relations laws, but there are some significant differences. Under RSA 546–A:5, the court must look to the "need" of the obligee while, under the domestic relations statutes, the courts are directed to consider the benefit and welfare of the children. Secondly, under RSA ch. 546–A, the ability of the obligee to earn is a factor listed by the Legislature as a relevant consideration, whereas the capacity of a dependent child to earn has been deemphasized by the courts in the domestic relations area. *Payette, supra,* 85 N.H. 297, 157 A. 531. Although these are subtle differences, I conclude that they contribute to lessening the support obligation New Hampshire has placed upon stepparents.

I rule that in New Hampshire the stepchild is not protected "to the same extent" as a natural child. While the civil liability enforcement provision, NH RSA 546–A:7, is broad, allowing either the child or the State to enforce the right of support, the right of support itself is diminished by the guidance given in NH RSA 546–A:5 for determining the amount of support. Secondly, the right of support derived from NH RSA ch. 546–A is limited to situations where the dependent is likely to be eligible for public assistance; the domestic relations statute is not so limited. Consequently, a natural child is protected by the domestic relations laws pending a separation or divorce while the stepchild is not, unless he or she is "in need." The time pending a separation or divorce is likely to be precisely the time when the need for a legally enforceable support obligation is no longer academic, and support becomes a requirement of survival. At this crucial point, the stepchild is legally deserted in New Hampshire. Obviously, a natural child has an enforceable support right against the natural parent after the divorce, but whether or not the stepchild-stepparent relationship survives a divorce for purposes of chapter 546–A has not yet been decided in New Hampshire. Further, the natural child has the additional benefit of the protection of New Hampshire's criminal support laws. NH RSA 460:23, 24, 28. The fact that New Hampshire has not made stepparents criminally liable for failure to support needy stepchildren is significant. A stepparent's support obligation must be decreed by a court before it becomes subject to the law enforcement authorities of this State, and, then, a stepparent is punishable not for failure to support a dependent, but for contempt of court. The State has, thereby, avoided the burden of directly assuring the welfare of stepchildren and placed that task on others.

In conclusion, I hold that New Hampshire laws do not create a stepparent's support obligation of "general applicability"; the obligation arises only when stepchildren are "in need," which is closely analogous to the welfare situation. I further find that New Hampshire's laws do not obligate stepparents to support their stepchildren "to the same extent" as natural parents are obligated to support their natural children. New Hampshire's stepchildren are not protected at all when they are not "in need," and are not afforded the same protections as are natural children, either under the criminal support statutes or in separation and divorce situations.

.

Because New Hampshire's stepparents are not liable under a "law of general applicability" for the support of their stepchildren "to the same extent" that natural parents are liable for the support of their natural children, defendants' policy of denying AFDC benefits to children living with a natural parent and a legally married stepparent contravenes federal law. 45 C.F.R. § 233.90(a). Therefore, plaintiffs' motion for summary judgment is granted, and defendants' motion for summary judgment is denied.

I could not, in fairness to counsel for both parties, close this opinion without commending them on the excellent job they have done in this case. The memoranda and material filed were extremely helpful.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the New Hampshire Division of Welfare's policy violates 45 C.F.R. § 233.90(a), and defendants, their agents and successors in office are hereby enjoined from denying AFDC benefits to any otherwise eligible person solely on the grounds that his or her recipient parent has married or remarried and there is a stepparent living in the home.

Judgment accordingly.

SO ORDERED.